UNITED STATES FIDELITY & GUARANTY CO. *v.* FIRST
STATE BANK OF SHAW.

[60 South. 47]

1. PLEADING. *Demurrer. Admissions. Banks. Deposit of public moneys. Insolvency. Liability of depositories. "Municipal."*

Under Code 1906, section 3485, so providing, all moneys deposited in a bank or other depository, by or for a tax collector or other officer having the custody of public funds, state, county, municipal, or levee board, whether the same be deposited in the name of the officer as an individual or otherwise is *prima facie* public money and a trust fund and is not liable to be taken by the general creditors of the depository.

2. SAME.

This statute is in derogation of the common law and must be strictly construed, and the word "municipal" was intended to embrace

only that character of municipal corporations as are represented by cities, towns and villages and levee boards, and does not include the board of drainage commissioners and the funds of such board deposited in a bank are not protected by the statute.

APPEAL from the chancery court of Bolivar county.

HON. M. E. DENTON, chancellor.

Suit by the United States Fidelity & Guaranty Company, surety of John L. Gills, treasurer of the drainage commissioners of Bolivar county, by virtue of his office as treasurer of the county, against the First State Bank of Shaw, of which W. J. Hardee was appointed receiver, to be subrogated to the rights of the drainage commissioners. From a decree sustaining a demurrer to the bill of complainant, the United States Fidelity & Guaranty Company appeals.

The facts are fully stated in the opinion of the court.

*Wm. M. Hall*, for appellant.

The basis of appellee's contention, which the court adopted, is that section 3485 specifies what funds are trust funds, and drainage funds are not specified— *expressio unius est exclusio alterius.* This, I submit, is a surprising misconception of the language of the statute.

The section in question is as follows: "3485 (3077). Public moneys are trust funds. All money deposited in bank or with any other depository, by or for a tax collector or other officer having the custody of public funds, state, county, municipal, or levee board, whether the same be deposited in the name of the officer as an individual or as an officer, or in the name of any other person, is *prima facie* public money and a trust fund, and is not liable to be taken by general creditors of the· officer or by the creditors of the depository."

County funds are specified, and my contention is that drainage funds are county funds. They are raised for a county purpose, towit, the drainage of some district

of the county needing drainage.   Chap. 39, Code 1906.
They are raised by assessment on lands in the particu-
lar district of the county (Sec. 1868), or by sale of bonds
based on assessment of lands in the particular district
of the county (Sec. 1709).   They are turned into the
county treasury (Sec. 1704).   The county tax collector
collects the delinquent assessments (Sec. 1703).   (See
particularly Chap. 191, Acts 1910.)   They are as much
county funds as funds for separate school districts of the
county, not municipalities, which the county treasurer
also handles (Sec. 4531).

What else need there be to constitute these funds,
county funds?

But appellee points out sections 1697 and 1707, and
says that these drainage districts are constituted cor-
porate entities with power to contract and be contracted
with and to sue and to be sued in their corporate names.
True, but that does not mean that they are anything
more than mere corporate agencies, for the more prompt
and efficient carrying out of a laudable and beneficient
public county work.   The   board   of   supervisors
appoint the commissioners (sec. 1682), fill vacancies
(sec. 1719), and the commissioners report to them (secs.
1715 and 1709).   This indicates the county's interest
and control.

The state of Mississippi carries out part of its educa-
tional scheme through corporate agencies.   The University
of Mississippi is a distinct entity—a corporation
(Chap. 146, Code); so is the Agricultural and Mechani-
cal College (Chap. 3, Code), and the Industrial Institute
and College (Chap. 66).   State funds are set aside for
the support and maintenance of these institutions, and
are subject to the disposal of the board of trustees, but
these funds undoubtedly remain state funds, conse-
crated to the particular state work.

Appellee contends that these drainage districts are
more than county agencies or institutions, because a

drainage district may not lie wholly within one county. The idea is that this puts the drainage districts in the same category with the levee board, which the legislature thought necessary to specifically mention in section 3485.

If it be true, as suggested, that a drainage district lying partly in one county and partly in another, is not a county agency or institution, but an entity like the levee board, it is not to be understood how that fact could militate against my theory so far as a drainage district lying wholly within one county is concerned; and we are concerned here only with a district of that character—a drainage district of Bolivar county.

We might, therefore, pretermit further consideration of this contention, but we think that theory is not consistent with the provisions of the drainage chapter, and that it might be well to point out these.

While it is true that chapter 39, Code 1906 (secs. 1684 and 1685) seems to contemplate the organization of drainage districts lying in more than one county, it is exceedingly doubtful whether it contemplates ousting the county of the control of its integral parts of such district and funds arising therefrom. Now, sections 1687, 1688 and 1689 provide how the landowners may petition the chancery court and the court shall refer the same to the drainage commissioners of the county to investigate. Section 1690 provides for an oath to be taken by the commissioners, to make a faithful investigation and report to the court. Section 1689 refers to these commissioners as the county commissioners. So the commissioners are those selected by the board of supervisors or elected by the people under section 1682. There is nothing here, I confess, to militate against the idea that the commissioners from each county constituting the proposed district, might be constituted one board. But suppose the district is organized as provided by section 1697, and the board of commissioners

start to raise funds for their work—how do they pro-
ceed? Section 1698 provides for assessment of the
lands affected, and sections 1700-1703 for hearing of
objections. Here the control of the chancery court
seems to end. So, to whom now does the law refer the
commissioners? Section 1709 provides for raising funds
by sale of bonds and refers them to the board of super-
visors. To what board? Necessarily of each county,
as no one board would have jurisdiction of lands over
the entire district. When the money is in hand, to
whom shall it be turned over for safe-keeping? Section
1704 furnishes the answer:    County treasurer to be
district treasurer. Treasurer of which county? If it
be answered, treasurer of the county in which the dis-
trict is organized, then we call attention to the fact that
the corporation does not appear to be organized or have
its domicile in any particular county of the district.
Note further the language of section 1704: "The treas-
urer of each county shall be treasurer," etc. The tax
collector of each county collects the assessments of
lands in his own county. (Sec. 1703.) These collec-
tions he turns over to the county treasurer. (Acts 1910,
p. 191.) Next, the law requires the commissioners
to report annually, showing the amount of money levied
for main district purposes, amount of orders issued, to
whom payable, amount of money on hand, etc. To
whom is report made? Not to the chancery court, be-
cause the statute does not say so and its control of the
commissioners seems to end when the assessment is
confirmed. (Sec. 1702.) In fact, the jurisdiction con-
ferred on the chancery court seems to be for the purpose
of condemnation and when the award is made and con-
firmed its jurisdiction seems to be ended. Then it
must be that the report is to be made to the board of
supervisors. But to the board of what county? There
could be no reason in making report to one board, be-
cause that board would have no control and voice in

matters relative to lands in another county. Section
1709 seems to contemplate that the board of supervisors
has control of the assessments and levies to pay the
bonds on hand in their respective counties involved
in the drainage district. So, it follows that the report
is to the board of supervisors in each county, and it
must also follow that the law contemplates preserving
the integrity of each county's part of such a drainage
district and the funds collected therein.

While these considerations demonstrate the correct-
ness of our contention, we do not believe all that should
be necessary to include that these funds are county
funds and trust funds, not liable to be taken by creditors
of the depository. We submit the fact that those funds
were and are committed by law to the custody of the
county treasurer and he is made responsible for their
safe-keeping as for other county funds, is alone sufficient.
This must be so, otherwise we should have the curious
anomaly of certain public funds in his hands, trust funds
and therefore not liable to be taken, and other public
funds, which it is equally important to protect, not trust
funds with no good reason to assign for the distinction.

The laws do not operate so unequally, and no con-
struction should be adopted which would render it un-
equal in its operation.

Again, it would seem that the funds collected by the
county tax collectors, under section 1703, would, by
express language of section 3485, be trust funds and not
liable to be taken, yet the same funds paid into the hands
of the county treasurer for account of the drainage dis-
trict, would not be. That would not do.

It was evidently the purpose of the legislature to de-
clare all public funds trust funds, no matter how handled
or deposited, to the end that they be not liable to be
taken by the creditors of the custodian or by the credi-
tors of the depository, but be, at all events, safe for the
public purpose for which they were raised. It also

must have been the effort of the legislature to adopt general expressions so as to include them all, no matter to whom committed. Note the fact that the statute does not say, "All moneys deposited in bank or with any other depository by or for a tax collector or treasurer," but "all moneys deposited in bank or with any other depository, by or for a tax collector or other officer having custody," etc. This is significant of the legislature's purpose to protect funds, whether in hands of the state treasurer, the treasurer or trustees of the university or other state schools and institutions, or any other officer-agent of the state; and county funds, whether in the hands of the treasurer, commissioners entrusted with some public work, or other officer-agent of the county; and so on through the category; and also significant of the fact that the legislature intended to leave no room for exceptions.

If appellee's contention that drainage district funds are not county funds is worthy of indulgence, then we submit that they are to be regarded as "municipal." There was probably significance in the adoption of this word instead of the word "municipality." The latter would have referred undoubtedly to cities and towns alone. Black's Law Dict., Municipality. But "municipal" is broader, applicable to any incorporated political subdivision. Note the idea carried out, state, the largest subdivision; county, the next subdivision; municipal, a generic term implying either a subdivision of a county or larger territory. "Levee board" was evidently tacked on as a legislative afterthought. Had it taken its logical position in the classification, it would have followed "state" and preceded "county," because it involves more territory than a county. This, however, does not obscure the legislative intent and meaning.

In Words and Phrases, page 4619, col. 1, it is said:

"Though the word 'municipal' is the adjective of 'municipality,' meaning 'pertaining to a municipality,'

between the noun and the adjective there is a difference
that while the noun names the thing, the adjective
merly describes a relation to a thing. The adjective
is more elastic than the word 'municipality,' or even
the term 'municipal' corporation. *State ex rel, Illinois
Central R. Co.* v. *Levee Com'rs of Orleans Levee Dist.*,
33 So. 385, 399, 109 La. 403."

In Black's Law Dictionary, "municipal" is defined:
"Municipal signifies that which belongs to a corpora-
tion or a city."

Neither Black's Law Dictionary nor Words and
Phrases furnish any definition of "municipal funds"
or "municipal moneys."

It would be exceedingly unfortunate for this court to
adopt any construction of the statute in question that
might except any public funds, whatever called, from
its beneficient operation. It cannot be anticipated when
it may come about that the particular custodian of the
public funds affected, and his bondsmen, may not be
able to respond and the public have no protection, save
that afforded by section 3485.

*W. G. Hardee*, for appellee.

Section 3485 of the Annotated Code of Mississippi
does not embrace drainage funds. Why? Because it
does not say so by word or implication. Certain public
funds are covered by this section and it tells in words too
plain to be disputed just what same consists of, towit:
state, county, municipal and levee board. It is a well-
settled principle of law that when a statute or any other
writing attempts to enumerate, then it will be held to
the enumeration. This is not denied by counsel for
appellant.

Counsel for appellant's first contention is that the
word "county" as used in the statute embraces drain-
age funds; and cites chapter 39 of the Annotated Code of
1906, and particularly sections 1698, 1703 and 1709;

and chapter 191 of the Acts of Mississippi of 1910, and section 4531 of the Code of 1906. After reading all of this I submit that it clearly shows that drainage funds are a separate and distinct fund; and that the only name you can give to such organizations is "drainage districts."

Again, see section 1697: "Said district is hereby declared to be organized as a drainage district . . . and is hereby declared to be a body politic. . . ."

Section 1707: " . . . it shall, in its corporate name, by its commissioners, henceforth, have power to contract and to be contracted with, to sue and be sued, to plead and be impleaded."

What is a drainage district? A *quasi*-corporation. See 14 Cyc. 1026 "C". *Elmore* v. *Drainage Commissioners*, 25 Am. St. Rep. 363; Drainage district a distinct entity. See *Mayor* v. *N. J. Drainage District*, 31 So. (La.) 305.

All dictionaries in giving definition of *quasi*-corporations gives such a definition as will include a drainage district. A class of corporations with powers and privileges not derived from an express charter, or articles of incorporation, with limited powers and duties conferred or imposed on them by statute or usage. A clear definition is given in second paragraph to note to *Todd* v. *Birdsall*, 13 Am. Dec. 524.

A drainage district and a levee board are very much alike, the same powers, duties, etc., both created and organized under acts of the legislature. What is a levee board, or levee district? See 25 Cyc. 194-A, which is as follows:

"A. Districts. 1. Nature and creation in general. (a) Definition. A levee district is a *quasi*-public corporation, created by the state, under its police power, for the performance of certain prescribed governmental functions in the district, such as the prevention of the overflowing or inundation of lands."

The levee board keeps off water from river. The drainage district carries off water that falls in the watershed.

I submit that the use of the words "levee board" as used in section 3485 is not, as counsel for appellant would make it appear, a legislative afterthought. The wise lawmakers, seeing that the words "state," "county" and "municipal" did not include and protect the funds of the said board, added the words "levee board" and protected the funds. Later, as is shown by the following pages of this brief the lawmakers passed a law protecting the funds of drainage districts.

Drainage funds are entirely different from separate school districts' funds, or 16th section funds, or funds of this character, and the laws recognize this and provide that the treasurer shall be treasurer for drainage districts, and that he shall give a bond for such drainage funds to the commissioners of drainage districts. (See 1704.) The laws do not require that the treasurer give a bond for 16th section funds, or school district funds, to the township trustees, or for school districts, and the bond which he is requited to give when the goes into office covers all of such funds, all county funds, but not drainage funds; and, therefore, he shall give a bond to the drainage commissioners for this fund.

It certainly is no fair illustration to compare drainage funds and drainage districts with the University of Mississippi, the Agricultural and Mechanical College, the Industrial Institute and College, etc. Here "state" funds, the very words used in section 3485, are set aside for the maintenance of these institutions; a part of the "state" money raised from the state as a whole, and not from any particular district.

Certainly it cannot be denied that the chapter 39 of the Code of 1906, and especially 1685 thereof, authorizes organizing drainage districts which may embrace land in more than one county; and even if a district embraces

land in only one county, this would not constitute it a county institution. A drainage district organized under our laws is simply and purely an entity, as much so as a levee board. Suppose a levee board, or district, was wholly within one county; would this make it a county institution and make its funds county funds? Certainly not. I do not take it that merely because this particular drainage district did not embrace lands in counties other than Bolivar, when the law authorized the taking in lands in other counties, and when this was not done because the survey, or watershed, did not happen to extend into another county, that this would make it a county institution and make its funds county funds. Said section 1685 provides that the district shall be organized in the chancery court of the county in which the greatest amount of land is included. Section 1704 makes the county treasurer of the county in which the district is organized (not the county treasurer in which the land is located) the district treasurer. If the funds are county funds, then we find the treasurer of one county handling funds and receiving commissions therefrom belonging to other counties. Clearly and undeniably, this would never do, and certainly was not the intention of the legislature.

Counsel for appellant seems to lay stress on the fact that section 1704 of the Code provides drainage funds shall be turned over to the county treasurer to be district treasurer. If indeed the funds were county funds, then why provide by law who shall be district treasurer? If it is county funds it goes to the county treasurer without any law expressly saying so; and here we have the law giving him a separate and distinct office. Certainly the tax collector shall collect the taxes. Why not? Does this add anything to appellant's contention? The same tax collector collects for the levee board and for every other tax that is levied in any possible way. The law provides that the drainage commissioners shall

make reports.  See section 1715.  But, it does not say that the report shall be made to the board of supervisors. This, however, is of no consequence, and has no bearing whatever on the question before the court.

While the laws may appear "curious" to counsel in that certain public funds are protected by section 3485, while others are not, still this does not change the law. Except for section 3485, certainly no public funds would be protected.  Now, when said section 3485 says what public funds are protected and names and enumerates them, some other public funds cannot be included. Conditions are continually arising whereby new laws have to be enacted for the public good and necessity. In fact, at the time of the passing of the law—section 3485—no such thing as a drainage district was known in Mississippi, and therefore, not included.  The legislature of 1910, seeing that drainage funds were not protected, passed a law including such funds.  See section 12, chap. 137, p. 129, Acts of 1910.

"Section 12.  All funds coming into the hands of the treasurer belonging to any drainage district shall be deposited in the depositories provided for by this act, under the same conditions as county funds are deposited, to be drawn by the proper parties and in the manner provided by law.  And all tax collectors may pay drainage taxes into such depository in the same manner as county funds are paid in, and shall be subject to the same protection herein provided for the protection of general county funds."

This certainly settles the question as to drainage funds not being county funds.  The legislature here discusses "county funds" and the "funds" derived from drainage dictricts, and passes a law protecting the "funds" belonging to "drainage districts" the same as "county funds."  What could be more conclusive than drainage funds are not county funds?  Unfortunately for appellant, but fortunately for the poor depositors of this

"busted" bank, who made and saved a few dollars by hard labor and denying themselves the actual necessities of life, this law was not in effect until Jan. 1, 1912.

Appellant would make it appear that a great injustice will be done if the "drainage money" is not paid—and to whom? Not to the public, or to the drainage district, but to them. Let us see and look into the great injustice.

1st. Appellant made for Jno. L. Gill, "among other bonds" his bond as drainage district treasurer, charged and collected a nice annual premium. Next, Gill put some money belonging to the drainage district, in said bank, requiring a bond. Again, appellant turns up bondsman, mind you, for the same money, charged and collected a nice annual premium; but not contented with this, they required the bank to give them a bond to protect them, and they now have this bond. Collecting premiums "coming and going," protected against loss by an indemnifying bond, and then a great injustice will be done if the strong arm of the law is not thrown around them. Oh Legislature of Mississippi! Oh Chancery Court! Oh Supreme Court! Protect us when we are already protected against any possible loss! Take this eight thousand five hundred and thirteen dollars, twenty five cents away from those depositors, including the widows and orphans who have lost their money! Let them go! They are entitled to nothing! Take what little there is left away from them and give it to us!

Counsel for appellant realizing that the word "county" funds will not embrace "drainage " funds, then drops to the next nearest word, towit, "municipal," and gets down to splitting hairs by drawing a difference between "municipal" and "municipality;" but after all he and the law books have to say, the difference is merely in the way you use the word. You, of course, would speak of cities, towns and villages as "municipalities," or one of them as a "municipality," and speak of its funds,

powers, officers, etc., as "municipal funds, powers, offi-
cers, etc." Sec. 3299, Code of 1906. "Municipal cor-
porations are divided into three classes—cities, towns
and villages." Section 3300 uses the words "municipal
powers, duties," section 3318, "municipal limits;" and
many other sections of chapter 99 of the Code of 1906
used the word "municipal," while sections 3301, 3308
and 3310, and many others, use the word "municipal-
ity." Certainly there can be no difference except the
way in speaking of the funds belonging to a city, town
or village, of course, "municipal" is correct. Now what
is the meaning of this word as used in the Code of 1906?
What was the meaning of the legislature? Chapter 99
gives the answer, whether it be municipal or munici-
pality; and section 3299 even goes as far as to define
just what it means, namely, cities, towns and villages.
In every place it is used the meaning can be no other
than cities, towns and villages. Now, when the Code
enumerates what funds are preferred by law, the law
applies to only such funds as are named, and the construc-
tion of the words used will be the general meaning as
used in the statute. You might say the United States,
or the state of Mississippi would be included in the word
"municipality," or the fund officer limits, etc., as muni-
cipal funds, officer limits, etc.; but certainly that is not
the meaning intended by the Code. I, too, say, look at
the general idea of section 3485. 1st state, 2nd county,
3d municipality and 4th levee board; and now since the
law of 1910, 5th funds belonging to the drainage dis-
trict—something the legislature, did not have in mind
and knew nothing about at the time of the passing of
the law, section 3485. Authorities cited by counsel,
as well as all dictionaries, bear out my contention, towit:
Municipality, the noun, and municipal, the adjective.
Indeed "Words and Phrases" defining the words fully
bears out my contention, and page 4625, vol. 5, col. 1,
"irrigation districts" are defined as not being municipal

corporations, citing *Board Directors, etc.* v. *Peterson*, 29 Pac. (Wash.) 995.

This district was organized under a law quite similar to ours, and in this the court held the district not to be a municipal corporation. In this case the contention was that the district was included in the following words of the Constitution, "county, city town and school district or other municipal corporations." Surely if this will not include the irrigation district, the wording of section 3485 of the Code of Mississippi of 1906 will not include a drainage district or the funds thereof.

This general meaning of the word municipal corporations is borne out by "municipal Corporations," 1 Dillon, section 31.

A sanitary district, reclamation district, irrigation district or drainage district is not a municipal corporation. 5. Words and Phrases, p. 4625, col. 2, Sanitary District, citing *In re Werner*, 62 Pac. 99, 129 Col. 567.

A drainage district, being practically the same as a levee board or district, I call attention to: See United *Ry. & T. Co.* v. *Wevers, Sheriff*, 36 So. 797.

While I have not found a case defining municipal funds, still this case deals with municipal tax and holds that a levee tax is not a municipal tax.

COOK, J., delivered the opinion of the court.

The bill of complaint does not alledge that the treasurer paid the money advanced by the guaranty company to his successor in office, or that the funds so advanced ever reached the drainage commission. It is unnecessary to construe section 3485 of the Code of 1906.

The demurrer admits only what the bill of complaint alleges. The *Fogg case*, 80 Miss. 750, 32 South. 285, and other cases decided by this court construing section 3485, have no application, as it was affirmatively shown in all those cases that the party seeking subrogation to the rights and remedies of the state and county had

paid the money to the county or state. We have no case here which would justify us in deciding whether the funds here involved were such public funds as are provided for by section 3485.

*Affirmed.*

### ON SUGGESTION OF ERROR.

At a former day of this term, we decided that the bill of complaint in this case did not make such case as would authorize us to construe section 3485, Code 1906. A careful re-examination of the bill of complaint leads us to the conclusion that we were probably wrong in the former opinion.

This statement is made in response to the suggestion or error filed herein, and we now address ourselves to a consideration of the meaning of section 3485, which reads as follows: "All money deposited in bank, or with any other depository, by or for a tax collector, or other officer having the custody of public funds, state, county, municipal, or levee board, whether the same be deposited in the name of the officer as an individual or as an officer, or in the name of any other person, is *prima facie* public money and a trust fund, and is not liable to be taken by the general creditors of the depository."

The board of drainage commissioners was organized under the statutes of this state, and John L. Gill, the treasurer of Bolivar county, was made by law *ex officio* treasurer of the drainage commission. Certain funds belonging to the drainage district were deposited by the said treasurer in the Bank of Shaw, and the United States Fidelity & Guaranty Company, appellant, gave to the treasurer its indemnifying bond, which provided that in default of the Bank of Shaw paying to the treasurer upon demand, the funds so deposited in the bank, the guaranty company would take the place of the bank and pay over the funds to the treasurer. The Bank of Shaw became insolvent, and W. G. Hardee was appointed

receiver.   The guaranty company paid to Mr.. Gill, the treasurer, the amount which he had on deposit in the insolvent bank, and now asks to be subrogated to the rights of the drainage commission. and claims that the funds involved in this controversy were such public funds as are provided for by section 3485 of the Code.

This is the precise question involved here.   It will be observed that the statute names certain character, or class, of public funds which, when deposited in any bank, become trust funds, and are not liable to be taken by the general creditors of the bank.   The statute mentions, as such public funds, state, county, municipal, or levee board funds, and it is the contention of the appellant here that, the drainage commission being a municipal corporation, the funds of that corporation are entitled to the preference provided for the public funds mentioned by section 3485.   The word "municipal," in its broadest sense, means public in contradistinction to private, and, as this is a public municipal corporation, it is claimed that its funds are covered by that designation.   This statute is in derogation of the common law and gives to the public extraordinary privileges at the expense of the citizens of the state, and other persons, who may be creditors of the depositories of public money, and should therefore be strictly construed.

We are of the opinion that the legislature, in the use of the word "municipal," intended only to embrace that character of municipal corporations as are represented by cities, towns, and villages, because it must be confessed that the county and levee boards are also municipal corporations in the broader sense of the term, and it was therefore unnecessary to mention either county or levee board in this act, if the legislature intended the word "municipal" to be interpreted in its most comprehensive sense.

It seems clear to us that the legislature did not intend to include within the meaning of this section any public

funds, except the funds of the state, the county, the city or town, and the levee board; and for this reason the judgment heretofore entered affirming the case and dismissing the bill of complaint will stand.