GEORGE W. FOGG, TAX COLLECTOR, *v.* BANK OF FRIAR'S POINT, ET AL.

PUBLIC MONEYS. *Trust funds. Insolvent bank. Assignments for creditors.*

Under code 1892, §3077, so providing, funds deposited by a tax collector in a bank are trust funds, and in case of an assignment for the benefit of creditors by the bank, its assets being insufficient to pay all of its debts, the tax collector is entitled to be paid in full in preference to other creditors, although he has settled with the state and county and cannot designate any part of the bank's assets as the funds so deposited by him, or their proceeds.

FROM the chancery court of, second district, Coahoma county.

HON. A. McC. KIMBROUGH, Chancellor.

Fogg, appellant, was complainant in the court below; the Bank of Friar's Point and others, including one Hebdon, its assignee-receiver, appellees, were defendants there. The section of the code involved is as follows: "3077. *Public moneys are trust funds.*—All money deposited in bank, or with any other depository, by or for a tax collector, or other officer having the custody of public funds, state, county, municipal, or levee board, whether the same be deposited in the name of the officer as an individual or as an officer, or in the name of any other person, is *prima facie* public money and a trust fund, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository."

The case arose out of this state of facts: Fogg, the appellant, was the tax collector of Coahoma county, and he made sundry deposits of money collected by him in his official capacity with the Bank of Friars' Point. These deposits were received by the bank when it was insolvent, and shortly there-

after, because of its insolvency, the bank made an assignment to Hebdon, assignee, and the assignment was a general one for the benefit of its creditors. The affairs of the bank were being wound up by Hebdon, as assignee-receiver, in the chancery court, where the assignment for the benefit of the creditors was being administered under ch. 8, code 1892. Fogg, the appellant, presented his petition to the chancery court against the bank and Hebdon, wherein he showed that the bank was indebted to him for public funds deposited therein by him as tax collector, and he claimed, under code 1892, § 3077, that his said deposits were trust funds, entitling him to be paid in preference to all other creditors of the bank. It was shown in the court below that Fogg, the appellant, had settled all accounts with the state, county, and levee board, and that the public was not interested in the funds sued for. The court below decreed adversely to Fogg, and he appealed from the decree dismissing his petition to the supreme court.

*J. W. Cutrer,* for appellant.

This proceeding was instituted by appellant to procure the relief which is to be found in the provisions of § 3077 of the annotated code. This section should be given a construction that will accomplish what it appears the legislature must have had in mind when it was enacted. The effect of the statute is to create a preference in favor of the official depositor over the general creditors of a bank, to insure absolute security for public funds placed on deposit.

It is true that a tax collector is a trustee as are other custodians of public funds. As a matter of fact, it is without question the intention of the law, that such trustees shall keep such funds in their own possession. If they part with such possession, the person taking the funds with notice of their character, takes them charged with the trust.

The statute by its terms has created an express trust, and the depository becomes a trustee *nolens volens* by its provisions.

All persons dealing with the trustee are charged with notice of its fiduciary capacity.

If it violates its trust, and make disposition of the trust fund, other than to hold the same for the tax collector, and holding for him, to hold for the state, county, or levee board, the collector is vested with a right to proceed against the trustee for breach of its trust.

The general equity rule is, the trust fund may be followed into the hands of a purchaser for value with notice, and into the hands of the volunteer, whether with notice of the breach or not. Flint on Trusts and Trustees, sec. 316.

In the state of the case presented by the statute, there can be no purchaser for value, and in good faith, without notice, because the statute gives notice.

In this case the bank used the trust fund in the general conduct of its business, and it is not possible to trace the money into any particular investment; but the trust fund was used to conserve and preserve the general estate of the trustee for the benefit of its creditors. Here intervenes the operation of the statute for the protection of the public; and its purpose, if it has any, is to modify the general rule in this wise and to this extent.

Money is not of easy indentification, and cannot be easily followed, like other classes of property.

The tax collector who pays money into a bank can never be expected to trace and identify it. The state, county, and levee board are equally powerless.

If it is to be held that before any relief can be had under the terms of the statute in question, the identical dollars and cents must be traced to the particular persons who received them, or shadowed and located as being in certain particular kinds of property into which each dollar may have been converted, the task becomes impossible of accomplishment, and the statute stands without validity.

The general rule that a *cestui que* trust cannot follow trust funds into a receiver's hands and recover the property, or claim

priority of payment over general creditors, has no application in this case, under the statute, by reason of the fact that the statute expressly provides that the claims of the creditors of the bank shall be subordinated to those of the *cestui que* trust.

By its very terms, the statute presupposed that the depository of public money might become insolvent; otherwise there could be but little need for the statute, as the depository would be able, if not always ready to respond upon demand to its legal obligations.

The statute comes into play only when disaster shall have befallen the depository, and then it can be made effective only by the subordination of the rights of creditors, who are forbidden to touch the trust fund, to the superior right of public officials, who, as such, are entitled to a return of the public funds paid into the bank. Everybody who deals with a bank is charged with notice of this fact. In the administration of the estate of an insolvent depository, a court of equity has ample power to protect the public funds, and under the statute it should exercise that right, so as to make effective the remedy of the official for the recovery of the trust fund. This can only be done by making the amount of the trust fund a charge upon the general estate of the insolvent.

A trust still subsists, and the appellant is the proper person to pursue the fund, and to insist upon a discharge of the trust obligation. Appellee cannot gainsay this. What the appellant shall do when he recovers it is immaterial to appellees. Appellant must at least be held to be subrogated to the rights of the state, county, and levee board, having discharged the obligation which he was under to them; but appellees have discharged no obligations, and therefore they cannot deny or question appellant's right to relief in this proceeding.

*Fitzgerald & Maynard,* for appellees.

The fallacy of attempting to fasten a lien upon the assets in the hands of appellees is settled in the well considered case of *Shields* v. *Thomas,* 71 Miss., 260.

It is a well recognized rule of law that a court of equity will lend its aid to a trust creditor in reclaiming his own; and, where identity is lost, will create "a charge upon the mass for the value of the ascertainable but inseparable part of the same which belonged to him." It gives to the party injured by an unlawful diversion of the trust funds a priority over the other creditors. But a trust creditor is not entitled to a preference, merely on the ground of the nature of his claim. Where it cannot be shown that the trust fund, or any part of it, is in the hands of the receiver, "either in its original or transmuted forms, or as a part of the assets of the bank," such priority is not given over the other creditors.

This was the law of our state, when the legislature inserted § 3077 in our annotated code; for which insertion the codifiers were not responsible. It was not intended by the legislature in inserting that section in the code to change the fundamental principle which controls in the application of the above rule, nor to substitute another and totally different rule as contended by counsel for appellant.

The only change made by § 3077 in the law as it previously stood, was to make such funds prima facie public money and a trust fund. This change simply shifted the burden of proof to the depository. It did not create any new or additional rights for a trust creditor.

These funds so deposited by appellant could not, either under the statute or the general law of equity courts, be claimed by him as a trust fund.

When he filed his petition herein, those deposits had ceased to have the character of a trust fund, because of the settlements by him in full with the state, county, and levee board, on account of the same. It was then a debt due him in his individual capacity.

His payment did not subrogate him to the rights of the state, county, and levee board, to pursue the money as a trust fund. His rights have no higher claim than that of the general cred-

itors of the bank. Besides, unless § 3077 of the code, by impli-
cation, legalized such deposits by officers, and gave them au-
thority to deposit generally the public funds in a bank, to be
mingled and mixed with other money deposited there, appel-
lant committed an illegal act in so depositing, and he cannot be
benefited by his own wrong, or be assisted by a court of chan-
cery therein. It is no answer to say that the bank also com-
mitted an unauthorized and illegal act, and must suffer for
being a party to the breach of trust. Courts of chancery will
not assist any party who has been guilty of a breach of trust;
and appellant who comes into this court with unclean hands
will not be heard, and is entitled to no relief. If he made a
deposit of the public funds as a special deposit, which he alone
was authorized to do, he fails to disclose the fact in his petition,
but on the contrary, admits in an agreed state of facts that his
deposits were not special, but were mixed and mingled with the
general funds of the bank.

Terral, J., delivered the opinion of the court.

In this case it is not possible for tax collector Fogg to put
his finger upon any particular asset of the Bank of Friar's
Point, now in the receiver's hands, and say, "This is my deposit
or the product of my deposit," but it is quite certain that the
moneys deposited by Fogg in the bank are in their transmuted
form in the hands of the receiver, Hebdon. The moneys of the
tax collector were intermingled with the other moneys of the
bank, and in consequence of the confusion a right to a particu-
lar individual asset cannot be asserted; yet a priority of pay-
ment out of the mass of assets arises to the tax collector. Sec-
tion 3077, code 1892, makes the deposit of the tax collector a
trust fund. It is a trust fund from its nature and character
(the legal estate being in the tax collector, and the beneficial
estate being in the state, county, and levee board), as well as
by the express declaration of § 3077. The bank received it as
a trust fund *nolens volens,* and the principles of equity relat-

ing to trusts fully apply to it. It is a leading principle of equity jurisprudence that "wherever a duty rests upon an individual, in the absence of all evidence to the contrary, it shall be presumed that he intended to do right rather than wrong; to act conscientiously rather than with bad faith; to perform his duty rather than to violate it." It must therefore be presumed, so far as it may, that the bank as trustee preserved the trust fund until all its other estate was exhausted, and that the trust moneys, so far as possible, are represented in the remaining assets of the bank. Pom. Eq. Jur., sec. 420; *Knatchbull* v. *Hallett,* 13 Ch. Div., 696; *Central Nat. Bank* v. *Mutual Life Ins. Co.,* 104 U. S., 54 (26 L. Ed., 693).

It is said, however, that the statute does not apply in this case because the tax collector, before bringing this suit, had settled with the state, county, and levee board. That should not affect the result, for, if so, it would be in the power of the trustee in every case to defeat the trust by a mere delay of payment. Every tax collector must settle monthly (code 1892, § 3840), and, if such settlement destroyed the equity, the right conferred by the statute would be almost valueless. The fund is primarily preserved as a trust for the benefit of the state, county, and levee board, and a payment to these several beneficiaries would subrogate the tax collector to their respective equities. A different result would defeat the wisdom of the legislature, and cannot be entertained.

*Reversed and remanded.*