JOHN GREEN v. J. R. COLE, TREASURER, AND J. A. RAMEY, SHERIFF.

[54 South. 65.]

PUBLIC FUNDS. *Banks. Priority of payments. Code* 1906, § 3485.
  Under Code 1906, § 3485, custodians of public funds, having such funds on deposit in banks have the right on the insolvency of such banks to impress all the assets of such bank as against general creditors, with their prior payment; and it is not required, in order to enforce such preference that the very funds, either in their original or transmuted forms, be pointed out in the hands of the receiver. It is only necessary to show that the funds went into the bank.

APPEAL from the chancery court of Wayne county.
HON. T. A. WOOD, Chancellor.

Bill by J. A. Ramey, sheriff, and tax collector, and J. R. Cole, treasurer of Wayne county, against John Green and others. From a decree for complainants, defendant, Green, appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Longstreet* and *Heidleburg & Heidleburg,* for appellant.

The real question raised in this case is not discussed in the brief for appellees, to any extent whatever.

In that brief, after citing section 3485 of the Code, quotation is made from the two cases of *Fogg* v. *Bank,* 80 Miss. 750, and *Metcalf* v. *Bank,* 89 Miss. 662, to the effect that the county officers are entitled to priority of payment "out of the assets of the bank." Then reference is made to "Words and Phrases" in order to show that the word "assets" embraces real estate as well as personal property. This is practically the whole argument. It does not touch the true question.

That question is this: What did the court itself mean in the proposition quoted from those decisions? What was it that this court had in mind when it used that expression? What is the reasonable and true rule, which alone the court could have intended to announce?

The question does not turn on any dogmatic definition of the word "assets," extracted from a law lexicon.

In order to deduce the real meaning of the court, and to arrive at the true limits of the doctrine announced, it is best to recite briefly the history of this question, for a few years back.

It will suffice, we think, to begin with the case of *Shields* v. *Thomas,* 71 Miss. 260. This case arose in 1891. The bank of Greenville failed. The tax collector had a large sum of money on deposit, for the state, the county, and the levee board. There was only three hundred and sixty-eight dollars on hand. None of the money deposited by the tax collector could be traced into the hands of the receiver, or traced into any of the assets received by him. The decision in the lower court was adverse to the district attorney, who sought to fix a charge on the general assets. He appealed, and this court affirmed the case. This court delivered a long opinion, reviewing all of the cases, and the leading text-

books, which review of authorities will show for itself. In that opinion, the court said, in conclusion that:

"As to the general assets of the Bank of Greenville, we think the petitioner is not entitled to relief upon the facts stated in the petition, because it is not shown that the funds deposited by the tax collector now form a part thereof in any form. The record does not disclose to what purpose the fund was applied. For any thing that appears to the contrary, it may have been lost in trade, appropriated to the payment of pre-existing debts or paid out to the agents and officers of the bank for services rendered, and what, if any portion was so lost or applied could probably not be ascertained with any degree of certainty. The court, in attempting to determine what portion, if any, of the trust fund has been lost and what yet remains as invested in and represented by the existing assets, would, from necessity, act upon mere conjecture."

Thus the law was carefully and definitely announced, as of and for the date 1891, at the October term, 1893. That suit was brought by the district attorney in obedience to a special statute to that end, approved February 10, 1892 (Laws 1892, p. 46).

At the same session of the legislature, the Revised Code of 1892 was enacted; and section 3077 of that Code was inserted into the chapter on Public Officers by that legislature—a new statute, adopted with manifest reference to the Greenville Bank matter; and manifestly intended either to declare the existing law or else to change the law if it should be decided adversely to the state's claim.

As it turned out, the law was changed by the statute, which is now section 3485 of the Code, and is as follows:

"3485. PUBLIC MONEYS ARE TRUST FUNDS. All moneys deposited in bank, or with any other depository, by or. for a tax collector, or other officer having the custody of public funds, state, county, municipal, or

levee board, whether the same be deposited in the name of the officer as an individual or as an officer, or in the name of any other person, is *prima facie* public money and a trust fund, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository.''

What that statute really meant was, that all such moneys should constitute, in effect, *prima facie,* a special deposit, should be kept in hand, and should not be subject to seizure, either by creditors of the officer (as by garnishment), or by creditors of the bank.

This court, however, construed it more broadly; but it never has been held to mean what is now claimed for it in this case, nor anything near it.

*Fogg* v. *Bank, supra,* 80 Miss. 750, was decided in 1902. The facts and the decision were as follows:

The Bank of Friars Point failed. The tax collector had on deposit some of his public moneys. The bank made a general assignment. The tax collector claimed a preference, under the statute. His claim was sustained. In so holding, this court placed its decision on the following ground (pages 755-756):

''The bank received it as a trust fund *nolens volens,* and the principles of equity relating to trusts fully apply to it. It is a leading principle of equity jurisprudence that 'wherever a duty rests upon an individual, in the absence of all evidence to the contrary, it shall be presumed that he intended to do right rather than wrong; to act conscientiously rather than with bad faith; to perform his duty rather than violate it.' It must therefore be presumed, so far as it may, that the bank as trustee preserved the trust fund until all its other estate was exhausted, and that the trust moneys, so far as possible, are represented in the remaining assets of the bank.''

Thus this court held that a presumption arose; but what sort of presumption: Manifestly, a presumption

*prima facie*; that is, indeed, the very provision of the statute. It is not a conclusive presumption at all. Besides, a presumption of what? The opinion answers: "That the bank as trustees preserved the trust fund until all its other estate was exhausted, and that the trust moneys, so far as possible, are represented in the remaining assets."

This statute, as construed and applied, in short, overruled *Fogg* v. *Bank, supra,* and provided that such deposits should have priority over general creditors, even though the depositors could not be traced. But it went, at least the case went, not one whit further.

Then came *Metcalf* v. *Bank,* 89 Miss. 649, decided in 1906-07. The Merchants and Planters Bank of Greenville had failed and assigned. The tax collector had deposited public moneys, and he was claiming a preference over the general creditors. General creditors filed a bill for various purposes, amongst others denying the right of the tax collector to have any preference. Various points were decided by the court. The question of preference was thus disposed of (and this is all that was said, page 662):

"On the point of the deposit by the sheriff we decide that it was a trust fund, under Ann. Code 1892, § 3077, and entitled to priority of payment out of the assets of the bank. *Fogg* v. *Bank,* 80 Miss. 755."

Now in neither of the foregoing cases was the question here raised, either considered or decided. It is true that the court said that "a priority of payment out of the mass of assets arises to the tax collector;" but this remark of the court, under the well known general rule in such case, must be confined to the case before it, and to the assets before it; and they were assets into which, while it could not be proved that the deposits went, yet still it was reasonably possible that they went.

In the leading case, *Fogg* v. *Bank,* the conclusion announced was expressly put on a presumption of equity.

The operation of the statute, as it was shown by the court, was, not to fix a lien on all the property of the bank, but to fix the character of trust funds on the moneys deposited, whether so deposited expressly as official moneys or nominally as private moneys; and, says the court, the moneys being received as trust moneys, even *nolens volens,* the presumption of equity attached (because of the trust fund) that the bank has done what a trustee should do, and has retained those trust moneys in its possession, either in its original or in its transmuted form. Observe the careful language employed by Judge Terrall.

Obviously, however, the assets which may be resorted to, out of which to claim a preference, must be, and can only be such assets as there is a reasonable possibility that the trust moneys shall have gone into them. It may not be possible to trace it actually, to show the ear marks on it; but it must be reasonably possible that it is there.

Again, we urge, let this court note the careful expressions of the Fogg case, to-wit: ''The principles of equity relating to trusts apply to it. . . . It must therefore be presumed, so far as it may, that the bank as trustee preserved the trust fund until all its other estate was exhausted, and the trust monies, so far as possible, are represented in the remaining assets of the bank.''

But here the proof is that, so far as this special asset or fund is concerned, it is not possible that the trust moneys are represented in it.

The case of *Hardy* v. *Bank,* 53 So. Rep. 395, which is so confidently relied on in the supplemental brief lately filed by the appellee, has no bearing on this question whatever, we submit. In that case, no question seems to have been made over the proposition that under the doctrine of the Fogg case, the county officials had priority; and the question discussed and decided was, whether that priority was assignable.

The case nowhere considers the specific question here presented; which is the point whether such priority can be claimed in respect to a part or particular item of the bank's assets into which the proof in the case affirmatively shows that it is not possible the money deposited should in any form have gone.

Baskin & Wilbourn, for appellees.

As we interpret the case of Fogg v. Bank, 80 Miss. 750, a priority of payment out of the mass of assets arises to the tax collector and treasurer of Wayne county, Mississippi. An exact quotation from the court in said case is that while the tax collector in that case could not put his finger upon any particular asset of the bank and declare it was his deposit or the product of his deposit, yet the court uses the following significant language: "Yet a priority of payment out of the mass of assets arises to the tax collector," citing section 3077 of the Code of 1892, which is re-enacted in the Code of 1906, as section 3485.

These deposits in behalf of complainants, in the language of the case of Fogg v. Bank, constituted a trust fund, from their nature and character, a legal estate being in the tax collector, and, in this instance, the treasurer and the beneficial estate being in the state and county.

This is again announced in the case of Metcalf v. Bank, 89 Miss., where on page 662 the following significant language is used: "On the point of the deposit by the sheriff we decide that it was a trust fund, under Ann. Code 1892, § 3077, and entitled to priority of payment out of the assets of the bank."

Then what became liable to pay this trust fund? The court has answered in these two cases, the assets of the bank.

By reference to Vaiden v. Hawkins, 59 Miss. 419, we find the court declares that assets is synonymous with

the word "property." ○ In Vol. 1 of Words and Phrases Judicially Defined, on page 556 and 557, we find the following definitions: In its common acceptance "assets" means "property." Again, "assets" means everything which can be made available for the payment of debts; the means which a party has as compared with his debts or liabilities. The word "assets" when applied to the property of a corporation, embraces its real estate, as well as personal property, stock, and choses in action.

From the statute and the decisions in 80 Miss., *Fogg* v. *Bank,* and 89 Miss., *Metcalf* v. *Bank, supra,* we understand the court in construing the statute, to declare twice that the priority of payment out of the mass of assets arises to the complainants in this case, and, as above stated, everybody who deals with a bank is charged with the notice of the fact that in the administration of the estate of an insolvent depository, a court of equity has ample power to protect the public funds, and, under the statute, it should exercise that right so as to make effective the remedy for the recovery of a trust fund. This can only be done by making the amount of the trust fund a charge upon the general estate of the insolvent. It no longer becomes necessary to follow the fund into the hands of an insolvent bank into the possession of the receiver of the bank, or in its transmuted form into any specific property, but since the adoption of this statute, it declares the rule to be that the assets of a bank, whatever they may be are subject to the prior payment of the debts of officials of the state of Mississippi, and that no general creditor of a depository, whether he be an ordinary contract creditor or a judgment creditor can be paid until after the public, whose officers as trustees, have had the trust-fund applied to the liquidation of a debt of the bank which received it.

Counsel for the appellant in the instant case, make the same argument as was made by counsel for the bank in the case of *Fogg* v. *Bank, supra,* and indeed they cite the same authorities of *Shields* v. *Thomas,* 71 Miss. 260, and we note in their brief where counsel contends that it was a well recognized rule of law that a court of equity will not lend its aid to the trust-creditor in claiming his own; and, where identity is lost, will create "a charge upon the mass for value of the ascertainable but inseparable part of the same, which belonged to him, but that a trust creditor is not entitled to a preference merely on the ground of the nature of his claim, from appellee's brief in the Fogg case. Quoting further, "Where it cannot be shown that the trust fund. or any part of it is in the hands of the receiver, 'either in its original or transmuted forms, or as a part of the assets of the bank,' such priority is not given over the other creditors;" and counsel for the appellee in the Fogg case contended that the statute No. 3077 made only this change in the law as it previously stood, that is, to make such funds *prima facie* public money and a trust fund, and that this change simply shifted the burden of proof to the depository and did not create any new or additional rights for a trust creditor.

The contention of counsel in that case was that section 3077 did not give to Fogg, the tax collector, any right to subject the funds to the priority of payment in his behalf, but the court decided differently, with this case of *Shields* v. *Thomas* before it, and the question as to the right of a tax collector, in this case of *Fogg* v. *Bank,* is admirably and clearly stated in the brief of the distinguished counsel for the appellant, who represented the tax collector.

We cannot believe that this decision of *Fogg* v. *Bank,* and its unequivocal approval by the court in 89 Miss. of *Metcalf* v. *Bank,* page 662, that there can any longer

be any doubt as to the right of the appellees in this case, to subject this money to the payment of their claims.

Argued orally by *Edward Mayes,* for appellant, and *R. E. Wilbourn,* for appellee.

Anderson, J., delivered the opinion of the court.

The appellees, J. A. Ramey, as sheriff and tax collector, and J. R. Cole, as treasurer, of Wayne county, filed their bill in the chancery court of that county against the appellant John Green. The appellant answered the bill, and there was a trial on bill, answer, and proofs, resulting in a decree in favor of appellees, from which this appeal is prosecuted. The Bank of Waynesboro, a banking corporation under the laws of this state, became insolvent and suspended business in June, 1908, and some time afterwards, at the instance of creditors, was put into the hands of a receiver. At the time of its failure the bank was indebted to the appellee Ramey as sheriff and tax collector in the sum of five thousand, eight hundred eighty-seven dollars, and twenty-three cents, and to the appellee Cole as county treasurer in the sum of fifteen hundred sixty-six dollars, and seventy-three cents. At the January term, 1909, of the circuit court, appellant, Green, who was a general creditor of the bank, recovered a judgment against it for two thousand, one hundred, thirty-three dollars and thirty-seven cents and costs, with a stay of execution for four months. At the expiration of the stay, execution was issued on this judgment and levied on the lot, bank building, furniture, and fixtures of the bank. After this levy, and before sale under the execution, appellees filed this bill against the appellant, Green, the sheriff having the execution in his hands, and the bank, by which they sought to charge the proceeds of the sale of the property so levied on with the

prior payment of their claims due them by the bank, which were for public funds deposited by them in the bank during the year 1908, prior to its failure. The bill prayed for an injunction against the proceeds of the sale of the property being applied to the debt of the appellant, and that they first be applied to the payment of their claims. The lot, bank building, furniture, and fixtures were acquired by the bank two or three years before its failure, and before the claims of appellees were incurred. It was shown that none of the public funds deposited by the appellees in the bank were traceable into this property; but, on the other hand, it was paid for out of other assets of the bank.

The question is whether, under section 3485, Code of 1906, an officer having the custody of public funds, deposited in a bank which has become insolvent, is entitled to priority of payment, as against general creditors, out of assets of such bank acquired and paid for prior to the deposit of such funds. Section 3485 of the Code is as follows: "All money deposited in bank, or with any other depository, by or for a tax collector, or other officer having the custody of public funds, state, county, municipal, or levee board, whether the same be deposited, in the name of the officer, as an individual or as an officer, or in the name of any other person, is *prima facie* public money and a trust fund, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository."

In *Bank* v. *Hardy,* 53 South. 395; referring to *Fogg* v. *Bank,* 80 Miss. 750, 32 South. 285, and *Metcalfe* v. *Bank,* 89 Miss. 649, 41 South. 377, the court said: "We find no fault with the principles announced in these cases. The statute in question was intended to provide for the security of the public funds. As against general creditors it stamps a charge on *all* the assets of the bank for the prior payment of such trust funds; and it is not required, in order to enforce such preference, that the

very funds, either in their original or transmuted forms, be pointed out in the hands of the receiver. It is only necessary to show that the funds went into the bank.''

It is true this exact question was not decided in either of those cases; but they show that the trend of decision is to give the statute such a construction, consistent with its terms, as will accomplish the purpose of its enactment, viz., the security of the public funds. In *Shields* v. *Thomas,* 71 Miss. 260, 14 South. 84, 42 Am. St. Rep. 458, it was held that equity will follow trust funds through all their changes, whether in their original form, or merged in a mass of which they form a part; but one seeking to fix a charge upon the mass of assets for the payment of such funds must either point out his specific funds among the mass, or that they are there in a transmuted form. If appellant's construction of this statute (which was passed after the decision in *Shields* v. *Thomas, supra*) is sound, it is merely declaratory of this well-established equitable principle, and therefore ineffectual for any purpose whatever.

Our judgment is that the remedy provided by this equitable doctrine was by the statute in question, as concerns public funds held in trust, extended and enlarged so as to give the officer having such funds on deposit the right to impress all the assets of the depository, as against general creditors, with their prior payment, even though shown not to be traceable into such assets. The language, ''a trust fund, and is not liable to be taken by the . . . creditors of the depository,'' means it may not be ''taken'' by such creditors, either directly or indirectly, and whether before or after the insolvency of such depository. Under the facts here, if appellant should prevail in his claim, it would be equivalent to the creditors of the bank taking these trust funds. To illustrate: When they were deposited, the assets of the bank were swelled that much, and when insolvency came, if they were not on hand in some form, it was

because they had been paid out by the bank to its creditors—had been "taken" by its creditors—possibly the very creditors whose funds went into the lot, bank building, furniture, and fixtures in controversy. When so taken, the remaining assets must take their place. The presumption is that the bank as trustee managed the trust funds lawfully, did not embezzle nor misappropriate them, that they were preserved until the other assets were exhausted, and if not part of its assets, that they were paid out to creditors in the usual course of business. *Fogg* v. *Bank, supra.* A case might arise where it could be shown that the funds had been unlawfully diverted or misappropriated by the depository, never becoming part of its assets, and therefore could not have been "taken" by its creditors.

But that is not this case. Appellant is not prejudiced; for, if these funds, stamped as trust funds, not to be taken by creditors, had not gone into the bank, there would have been that much less assets out of which to make his debt. Having gone into it, to give him priority out of the assets left would amount to a taking by him and other creditors indirectly of such funds.

*Affirmed.*