POWELL v. BOARD of SUPERVISORS of TUNICA COUNTY.

[65 South. 499.]

1. DEPOSITORIES. *Public moneys. Trust fund. Unsecured excess. Creation. Qualification. Code 1906, section 3485.*

When the board of supervisors have elected a depository of county funds under the act of the legislature authorizing such depositories to be selected, and when the advertisement calls for bids for all of the county funds and fixes the amount of security to be given, and when the bid accepted is for all of the county funds and the security required by the advertisement is given, and when the order of the board awards all of the county funds to the successful bidder, there being at that time less than the amount of the security with ten per cent off, on deposit, and afterwards the board permits the depository to have in its hands a greater amount of public funds than it has security for, Code 1906, section 3485, providing that public moneys deposited in a bank shall constitute a trust fund and not be liable to be taken by creditors of the bank, applies to such excess, though not to the funds secured; the excess being received into the bank, not in its capacity as a depository, but simply as a bank receiving public funds.

2. Depositories.  *Creation.*  *Qualification.*

    The selection of a bank does not complete its creation as a county depository.  This is only accomplished by the depositing of the securities, which is followed by the issuance of a commission showing its qualification as a depository to receive and disburse funds in amount not exceeding a sum stated.

Appeal from the chancery court of Tunica county. Hon. M. E. Denton, Chancellor.

Petition by the board of supervisors of Tunica county against W. H. Powell, receiver of the Bank of Tunica, praying that the claim be declared a trust fund payable to the county and given a first preference lien. From a decree for the county, the receiver appeals.

The facts are fully stated in the opinion of the court.

*Montgomery & Montgomery,* for appellant.

There is only one question presented by this appeal, to wit: When the board of supervisors have elected a depository of county funds under the act of the legislature authorizing such depositories to be selected and when the advertisement calls for bids for all of the county funds and fixes the amount of security to be given, and when the bid accepted is for all of the county funds and the security required by the advertisement is given; and when the order of the board awards all of the county funds to the successful bidder, there being at that time less than the amount of the security with ten per cent. off, on deposit and afterwards, the board permits the depository to have in its hands a greater amount of public funds than it has security for, whether section 3485 of the Code of 1906 applies to the excess.

As will be seen by the notice published by the order of the board and by the commission issued by the president of the board to the depository in this case, the board dealt with the election of this depository at the January meeting, 1913, as if it were acting under chapter 137 of the Laws of 1910, when in fact the board was really

acting under authority of chapter 194 of the Laws of 1912, page 208, which is a substitute for the Law of 1910.

However, as we conceive in all material particulars, so far as the question raised here is concerned, the two acts are the same. Certainly so, as to those parts which are necessary to be referred to in this argument. In section 1 of each chapter, it is provided, in effect, though not in the same language, that the public funds of the several counties in the treasury shall be kept on deposit in the state or National Bank, or some of them doing business in the several counties, and in the suceeding section, it is mandatory that the board of supervisors shall elect this depository in the manner provided by law. In section 7 of the Act of 1910 and in section 8 of the Act of 1912, it is required that the tax collector of each county shall pay the amount due the county by him to a county depository if there be one, so that neither the county treasurer, nor the tax collector, nor the sheriff, has any option in the matter, but must pay the money of the county into the county depository elected for all of the county funds. This being done, the petition in this case and the exhibits thereto show that this was done.

The proof shows that when this depository was elected in January, 1913, there was on deposit with the county treasury, of money belonging to the county, less than forty-five thousand dollars, which money was all in the Bank of Tunica at that time; that Bank having been elected the county depository the year before at a rate of interest of four per cent. per annum on average daily balances. That at the January meeting, 1913, the Bank of Tunica had opposition. The Planters Bank of Tunica having put in a bid for the county money at five per cent. per annum on average daily balances. The Bank of Tunica bid as high as six per cent. per annum on average daily balances and was elected the depository at six per cent. per annum on average daily balances, because it was the highest rate of interest offered.

It is not disputed that the order of the board and the notice given by the order of the board required the depository to deposit with the clerk of the board fifty thousand dollars in securities and that this was done by this bank. That the securities were received to the amount of fifty thousand dollars, there being then less than forty-five thousand dollars on hand. That the order of the board elected the Bank of Tunica as the depository for all of the county funds for that year.

It is not disputed that the Bank of Tunica was the sole depository. That all of the money coming into the hands of the tax collector and sheriff of the county and the county treasury was deposited with the Bank of Tunica up to the time of the failure of that bank, in April, 1913, and that this was with the knowledge and consent of the board of supervisors, cannot be doubted for a moment from this record. Yet the contention of the board of supervisors is that because the members of that board neglected to do their duty in this: That they did not see to it that sufficient security was given for the protection of the county funds, that for this reason, the depositors whose money was in the Bank of Tunica at the time of its failure, must lose and the county must be permitted to claim and receive twenty-one thousand dollars as a preference claim because of the failure of the board of supervisors to require and take sufficient security for the deposit.

It was settled in the case of *Shields* v. *Thomas,* 71 Miss. 260 that the public funds on deposit in a bank were not a preference claim over the general creditors of the bank as far as the assets of the bank were concerned, but could only be collected as a preference claim in case it could be proven that the funds deposited form a part of the general assets of the bank. *Fidelity & Guaranty Co.* v. *First State Bank of Shaw,* 103 Miss ——; *Fogg* v. *The Bank of Friars Point,* 80 Miss. ——; *Metcalf* v. *Bank,* 89 Miss. 649; *Commercial Bank* v. *Hardy,* 97 Miss. 755; *Green* v. *Cole,* 98 Miss. 67.

We come now to the proposition which we are contend-ing for and the only question in this case, to wit: That the statute, section 3485 of the Code of 1906, has no ap-plication to the case at bar. The board of supervisors, acting under authority of chapter 194 of the Laws of 1912, which is a substitute for chapter 137 of the Laws of 1910, elected the Bank of Tunica as the depository for all the funds of Tunica county and made a contract with it accepting the bid of the bank, not for a part of the coun-ty's money, but for all of it, for that is what the adver-tisement called for bids for; that is what the bank made a bid for and that is what the order of the board of super-visors accepting that bid at six per cent. interest on average daily balances appointed the bank for. And under section 3 it is required that there shall be placed on deposit with the county treasurer certain securities in the sum of ten per cent. greater than the maximum amount to be placed on deposit in any such bank of the county at any one time.

This bank having bid for all the county funds and hav-ing been elected the sole depository, it simply complied with the order of the board of supervisors as to what amount of security it should give. It is true that the commission issued to the bank, said that there would not be on deposit more than forty-five thousand dollars at any one time, but this commission, as we submit, in no way interferes with the fact that the bank had been elected the sole depository for all the county funds and we submit that it was the duty of the board to see, later, when the amount on deposit had exceeded the security, that the bank should give further security; and that by electing the bank the sole depository at the rather ex-travagant rate of interest contracted for, it became the sole depository for all of the funds and the tax collector had no right to handle the money coming into his hands belonging to the county except under the provisions of that act. In fact, the tax collector was not supposed to know what the total amount on deposit in the depository

was.   It was his duty to pay all the money coming into his hands as tax collector belonging to the county, into the county depository, if there was one, as there was, receiving triplicate receipts for the same; mailing to the chancery clerk and treasurer, each, a copy of the same and as a matter of fact, the tax collector may not have known, nor was it his duty to know, what the total amount at any one time on deposit in the bank really was.

The case of *Potter* v. *Fidelity & Guaranty Co.,* 101 Miss. 823, is a case in point, as we submit, with the question that we are now discussing: In that case, the following principles are announced: (a) In the absence of statutory or constitutional authority, the state, as sovereign, has no preferential rights in Mississippi. (b) State sovereignty is not involved when the question is one of priority merely. (c) Section 3485 of the Code of 1906, being in derogation of the common law, is to be strictly construed against the state asserting a claim by virtue of that statute. (d) While section 3485 of the Code of 1906, was not repealed by the depository law, and still stands, as security for all deposits of public money made by any person whatever in case of the insolvency of the depository, where the deposit is not made by virtue of the depository law, still where the state disposes itself of its public funds, as required by its depository laws, the relation of debtor and creditor is established between the state and the depository merely, and the state must make its money, in the event of the insolvency of the depository, out of its security, and failing in this, must share the assets *pro rata* with the other creditors. (e) When funds are placed by the state in a depository, as provided by the Laws of 1908, chapter 96, they are not trust funds within any meaning or purpose provided for by section 3485 of the Code of 1906.

*Geo. H. Ethridge,* for appellee.

I think that the action of the chancellor was correct in allowing the claim of the board of supervisors and mak-

ing it a preference claim over the general creditors of the bank and that this contention is sustainable without reference to the soundness of the decision in the case of *Potter* v. *Fidelity Deposit Company*, 101 Miss. 823, 58 So. 713, and secondly, if mistaken on this proposition, that the deposit in the bank was a preference claim under section 3485, of the Code, and if necessary to sustain the decree of the chancellor, the court should modify or overrule the Potter case.

Under chapter 194, Laws of 1912, the county funds are directed to be placed and kept in a state or National Bank doing business in the several counties on condition that the bank will qualify as a depository and bid not less than two per cent. upon the average daily balances upon the funds of the county in the county depository, and where more than one bank in a county qualify as a depository, the board of supervisors shall have the right to designate which and how much of any fund shall be kept on deposit in any one depository and adopt regulations for using such deposit.

By section 2, of the act, the board is directed, at the December meeting in each year, to give notice to all banks in their counties, by publication, of the provisions of the act, and that at the January meeting, or some subsequent meeting the board will receive proposals which the banks may make for the privilege of keeping the county funds or any part thereof, and the security proposed, and provides that the county funds to be deposited in the banks proposing the best terms, having in view the safety of the funds and the terms made each depository.

Section 3 provides as to how a bank shall qualify as a county depository which is by placing in deposit with the county treasurer as securities in an amount ten per cent. greater than the maximum sum to be placed on deposit in such bank at any time, and states further the kind of securities that may be so deposited.

Sections 4 and 5 provides for a commission, the form of which is prescribed by statute, and one of the provi-

sions of this commission provides "but shall not have on deposit at any time an amount exceeding the sum of $——." When any county funds are paid into the depository, the depository is required by section 6 of the act, to make out triplicate receipts, specifying the accounts on which the payment is made, one receipt to be sent to the county treasurer and one to the chancery clerk.

Section 7 of the act, provides for quarterly reports at the regular January, April, July and October meetings, and such other times as the board may require. Section 8 provides how the tax collector shall settle with the county depository.

Section 10 provides that in case of failure to pay any warrant lawfully issued on any funds on deposit belonging to the county in such depository, that the county treasurer shall sell the securities placed with him or so much as may be necessary to cover back into the county treasury the amount of county funds on deposit with such depository with accrued interest thereon and that the sales of such securities shall be made by the county treasurer at the best price he can obtain either at public or private sale. And in the event of the failure to pay warrant, where the depository has placed security bonds, the treasurer shall notify the president of the board of supervisors who shall take such action as he may deem best and most expedient for the recovery back into the treasury of the county money on deposit in such depository, and he is authorized to employ counsel if necessary, and in addition to the rest, that the depository shall be liable for damages at the rate of one cent per month for any delay in paying over the county funds when lawfully demanded and the bond of the depository shall be liable for said expenses and damages.

Section 11, of the act, makes the traffic in public funds by the county treasurer or tax collector, or any officer, a felony. And section 12 provides the penalty for failure to comply with the provisions of the act.

It will be seen from a review and a careful study of chapter 194, of the Laws of 1912, that it is clearly contemplated that the money deposited is county money and that it shall be available at all times for the use of the county in meeting the demands of its ordinary business.

There is nothing in the entire chapter inconsistent with the provisions of section 3485, of the Code. I respectfully submit that where a depository files only a certain security and where its commission, which is provided by statute, limits the amount to a designated sum, that any sum of money placed in the depository, by any officers, stands in the same relation that it would had the depository never qualified at all. In other words, a bank can only be a depository of the county funds when it has complied with the law by placing the necessary security.

There is no sound reason in saying that when the state or the counties deposit their money in the bank that they waive their right to priority. They had the right of priority and that right is not either in terms or by any fair implication except out of the law when the depository is created and provided for. There is no inconsistency or conflict in the terms of the two statutes. In my judgment, this statute, section 3485, is not to be construed on the principle that it is in derogation of common right. It is rather to be construed as a remedial statute, for the preservation of the rights of all the people as against the rights of a few. It becomes more important to preserve this right of priority since the public money is to be placed in the banks and it should not be construed in such a way as to make the depository law an unfavored law. If, in the present case, the people of Tunica county, cannot recover their money for the use of the county and if that example is followed by and occurs in other counties as it does and will occur in all times of financial disaster, there will be a clamor raised for the repeal of the law and the money would again be withdrawn from the channels of commerce and trade and be locked up in the vaults of the several counties for long intervals of time.

It must be remembered in this connection that the state and counties, in placing the public money in the banks, are not actuated by business purposes and are not influenced in any great degree by any interest considera- tion.  The rate of interest provided by law in a deposi- tory is much less than the minimum interest rate under general contracts.  I think the ruling of the courts in the former cases of *Green* v. *Cole,* 98 Miss. 67, 54 So. 65; *Bank* v. *Hardy,* 87 Miss. 755, 53 So. 395; *Fogg* v. *Hibdon,* 80 Miss. 750, 32 So. 285 are much stronger in their reason- ing and on principle than the case of *Potter* v. *Fidelity & Deposit Company.*  The learned chief justice, in the latter case, seemed to proceed upon the idea that the leg- islature's purpose was to make a modification of section 3485, of the Code.  There is nothing in my judgment, to indicate that the depository laws intend to make a com- plete act concerning the public funds and their use and management.  If such constructions were sound, the leg- islature should have repealed all the other provisions bearing upon the matter.

*Wilson & Armstrong,* for appellee.

The deposit by the sheriff and tax collector and by the county treasurer of public funds in a bank without ex- press authority of law, creates the bank trustee *ex male- ficio,* for the county, and such public funds are trust funds for which a preference lien and charge is created upon all the funds and assets of the bank.  Code 1906, section 3485; *Fogg* v. *Bank,* 80 Miss. 750; *Metcalf* v. *Bank,* 89 Miss. 649; *Commercial Bank* v. *Hardy,* 53 So. 395; *Green* v. *Cole,* 98 Miss. 67; *Potter* v. *Fidelity & Deposit Co.,* 101 Miss. 823.

While the tax collector and treasurer are authorized to deposit public funds in the bank selected as depository, this authority ceases whenever the bank has on hand an amount within ten per cent. of the security deposited by it.  This limitation of the amount to be held by the bank

at any one time is fixed by law, notice of which is given in the commission issued to the depository bank, and an account of which is kept by the county auditor, and this authority for such deposit can only be granted upon the issuance of a pay warrant by the county auditor, who had the amounts that have been placed in the bank, as well as the withdrawals by him, shown on his books. Chapter 194, Acts 1912, page 208, sections 3, 4, 6 and 8.

The authority to deposit in a bank, given to the tax collector and treasurer, is limited to ninety per cent. of the security of such depository shown by commission to such depository. Whenever the depository or depositories have on hand the full amount that they are authorized to receive, then the officers have no right to pay the money to the depository, nor has the depository any right to receive it. Such reception by the depository is unlawful, and it holds the money as a trustee for the county, and in that case, section 3485 has full application.

The Bank of Tunica was duly selected county depository. It qualified to the extent only of forty-five thousand, four hundred, fifty-four dollars and fifty-five cents, to be exact. Its commission limited it within that amount, as the law required. It was a depository to only that extent. When it had that much money, it was no longer qualified as county depository, and stood like any other bank, until it gave further security. Any excess was beyond its authority to receive, of which it had knowledge, and for any excess, it stood the same as any other bank, and was chargeable with the money as a trust fund. Chapter 194, Laws 1912; *Potter* v. *Fidelity & Depository Co.,* 101 Miss. 829; *Yellowstone County* v. *First Trust & Savings Bank* (Mont.), 128 Pac. 596; *Bartley* v. *Meserve Re. State Treasurer's Settlement,* 51 Neb. 116, 36 L. R. A. 746, 70 N. W. 532.

REED, J., delivered the opinion of the court.

The Bank of Tunica was selected as the depository of the county of Tunica for the year 1913. We quote from

the order made by the board of supervisors on January 6, 1913, accepting the bank's bid, approving its securities offered, and directing the issuance of a commission to it, as follows:

"It is therefore ordered by the board that the said bid of said bank of Tunica as depository of all funds of Tunica county be and the same is hereby accepted, and said bonds above mentioned are hereby approved, and said depository shall account for and pay interest to the said county of Tunica on any daily balances of all funds of said county deposited with it during the year 1913 in the manner as provided by law."

It appears that the notice to create a depository was given by the board of supervisors in accordance with chapter 137 of the Acts of 1910, and the commission was directed to be issued as provided for in that law. However, in this appeal, counsel for appellant and appellee treat and consider chapter 194 of the Acts of 1912, which was enacted to take the place of chapter 137 of the Laws of 1910, and to be the law of the state for the establishment of county depositories, as applicable in this case.

The commission issued to the Bank of Tunica after stating that the bank had complied with the requirements of the law, by giving the several securities placed with the county treasurer, being for the total amount of fifty thousand dollars, declares that:

The bank "is hereby created and appointed depository of the county of Tunica for the balance of the term ending the 31st of December, 1913, and is hereby authorized and empowered to receive and disburse, according to law, any and all county funds there offered for deposit, but shall not have on deposit at any time an amount exceeding forty-five thousand dollars, the said depository agreeing to account for and pay interest at the rate of and in the manner provided by law for the use of the county funds there kept on deposit."

The Bank of Tunica failed on April 28, 1913, and became insolvent. Thereafter, W. H. Powell, appellant,

upon a general creditors' bill, was appointed by the chancery court receiver of the bank and is engaged in administering its affairs having charge of all of its assets and undertaking the payment of its debts.

At the time of the failure there was on deposit in the bank the public funds of the county to the amount of seventy-one thousand, nine hundred, twenty dollars and fifty-two cents.. The board of supervisors of Tunica county, on August 12, 1913, filed a petition in the chancery court setting out all of the facts relating to the creation of the county depository and the depositing of the county funds therein, alleging that the excess of twenty-one thousand, nine hundred, twenty dollars and fifty-two cents over the security given for fifty thousand dollars was an unsecured sum in the bank, and praying that the claim for this excess be established and declared a trust fund payable to the county, and:

"That a first preference lien and charge be fixed upon all the assets of said bank and all proceeds thereof on hand, or which may come into the hands of the receiver, and that he be directed to pay said sum and interest before paying any other creditors."

An answer was filed by the receiver, denying that the county was entitled to any preference over other creditors of the bank or had any rights to the assets of the bank superior to those of other creditors. The receiver also claimed in his answer that the county had deposited all of its funds in the bank as the sole qualified depository under the law therefor; that the funds thereby became assets of the bank as other sums borrowed by it; that the relation of debtor and creditor merely then existed; that the county must recover its funds in the event of insolvency out of the securities; and that, failing in this, it must take its place in the line of general creditors and share its assets pro rata with them.

The chancery court, by its final decree, sustained the contention of the county and declared the amount in the

bank in excess of the securities given to be a prior and preference charge against all funds and assets in the hands of the receiver and administered in the court subject to the payment of proper costs and expense in administering the estate. From this decree the present appeal has been prosecuted.

Counsel for appellant in beginning their brief say:

"There is only one question presented by this appeal, to wit: When the board of supervisors have elected a depository of county funds under the act of the legislature and authorizing such depositories to be selected, and when the advertisement calls for bids for all of the county funds and fixes the amount of security to be given, and when the bid accepted is for all of the county funds and the security required by the advertisement is given, and when the order of the board awards all of the county funds to the successful bidder, there being at that time less than the amount of the security with ten per cent. off, on deposit, and afterwards the board permits the depository to have in its hands a greater amount of public funds than it has security for, whether section 3485 of the Code of 1906 applies to the excess."

Section 3485 of the Code reads:

"Public moneys are trust funds.—All money deposited in bank, or with any other depository, by or for a tax collector, or other officer having the custody of public funds, state, county, municipal, or levee board, whether the same be deposited in the name of the officer as an individual or as an officer, or in the name of any other person, is *prima facie* public money and a trust fund, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository."

It is beyond question in this state that, independent of the depository law, a county has a preference claim against all assets of a bank for public funds on deposit therein, and that such funds are trust funds for which this preference is given. *Fogg* v. *Bank,* 80 Miss. 750, 32

So. 285; *Metcalfe* v. *Bank,* 89 Miss. 649, 41 So. 377; *Green* v. *Cole,* 98 Miss. 67, 54 So. 65; *Potter* v. *Fidelity & Deposit Co.,* 101 Miss. 823, 58 So. 713.

We do not see, in the present law, chapter 194 of the Acts of 1912, providing for the establishment of a county depository anything inconsistent with the provisions of section 3485 of the Code of 1906. The plan of the legislature. in authorizing the establishment of county depositories has for its purpose the providing of security for the county public funds. Such funds when secured in such depository do not need to be protected by section 3485. Therefore section 3485 will not operate to provide a preference charge on funds secured in a depository. This, in effect, was decided in *Potter* v. *Fidelity & Deposit Company.* In that case Chief Justice MAYES, delivering the opinion of the court, said:

"Section 3485 was not repealed, or intended to be repealed, by the Laws of 1908. Section 3485 still stands as security to the state for all deposits of its money made by any person, in case of the insolvency of the institution where the deposit is made, in all cases where any deposit is not made by virtue of its authority as evidenced by the depository law of 1908."

The funds of the county in the depository bank to the amount of the security, fifty thousand dollars, were thereby secured funds and not protected by section 3485. The bank was created and appointed a depository of the county, for the term, to receive and disburse according to law funds offered for deposit, but with the express prohibition that the bank should not have on deposit at any time an amount exceeding forty-five thousand dollars, which was intended to be ten per cent. less than the total amount of the securities placed, fifty thousand dollars. The bank was the qualified county depository for all county funds up to the amount fixed by the board of supervisors when establishing it the depository. It could not be the depository except as authorized by the statute

and the order of the board in compliance therewith. The authority is shown by the commission issued to the bank.

The very purpose of the legislature, by the enactment of the law for the establishment of county depositories, was to provide for the safe-keeping of the county funds. The safety of the funds is to be secured by the placing on deposit with the county treasurer, securities in amount ten per cent. greater than the maximum sum to be on deposit in the bank at any one time. Under the plan, the board of supervisors may arrange for the depositing of the county funds in more than one bank. If two banks were selected and made depositories, then each bank would be a depository to the amount fixed in its contract or arrangement with the board.

It is surely a proper interpretation to put upon the statute to say that a bank selected as a depository is only such depository, authorized by law to receive deposits of county funds, in the amount to which it qualifies by the deposit of securities. Therefore county public funds received into the bank up to the amount for which it has qualified are received and held by the bank as a county depository. When the full amount for which the bank has qualified has been reached, then any other funds will be received into the bank, not in its capacity as depository, but simply as a bank which is not a county depository receiving public funds. Such excess funds will come under the protection of section 3485. They are funds unsecured, deposited in the bank without authority given in the statute, and by virtue of the order of the board of supervisors following the directions of the statute, and which authority is to be expressed in the commission issued to the bank. They are trust funds and are not liable to be taken by the creditors of the depository.

We note the argument made by counsel for appellant that, as the board of supervisors selected the Bank of Tunica as the sole depository for all of the county funds, the county has itself disposed of its public funds as re-

quired by the depository laws, and the relation of debtor and creditor is thereby established between the bank and the county; and that, in the event of insolvency, the county must realize out of its securities taken, and, failing in this, must share the assets *pro rata* with other creditors; but we do not see that this will avail appellant in this consideration.

The selection of a bank does not complete its creation as a county depository. This is only accomplished by the depositing of the securities, which is followed by the issuance of a commission showing its qualification as depository to receive and disburse funds in amount not exceeding a sum stated. The Bank of Tunica, elected county depository for all funds, only qualified for a definite amount. It is not a question of election but of qualification. A bank may be elected, and still never qualify by depositing the securities.

We do not see that the protection of the excess funds by the operation of section 3485 will be prevented by the board's permitting the depository to have in its possession a greater amount of funds than the bank had qualified for. This is a suit by the county. The rights of the county are sought to be enforced, not those of the board. In the case at bar the failure of the board to keep informed as to the amount of funds in the bank and to prevent the sum being in excess of the proper amount will not affect the county's rights; for the bank knew the amount on deposit and knew whether it had exceeded the amount it was authorized to receive under its commission. It acted wrongfully in receiving such excess amount. It became a trustee under the law holding such funds not simply as a debtor, but as a trustee.

We conclude that the chancellor did not err in his decree and that the amount of the county funds deposited in the bank in excess of the sum in which the bank qualified as depository is protected by section 3485.

*Affirmed.*