**GULLEY, State Tax Collector, v. WISDOM.**

**No. 6937.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 28, 1934.

Chalmers Potter, of Jackson, Miss., for appellant.

Fulton Thompson, of Jackson, Miss., and Hugh V. Wall, of Brookhaven, Miss., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Gulley, as tax collector, acting for the city of Brookhaven under a state law, sought to establish a preferential lien or priority upon the assets of the failed First National Bank of Brookhaven in the hands of its receiver for the city's deposits amounting to $33,162.92. The essential facts are that in March, 1929, the city authorities ordered that the bank be selected as a city depository for one year and until a successor was qualified; the bank agreeing to pay 2 per cent. interest on daily balances. The order made no reference to the giving of security. January 6, 1931, the bank having proposed to pay 2 per cent. interest and to protect the deposit by pledging bonds as required by law to an amount 10 per centum greater than the maximum intended deposits, the city authorities again designated it "an official depository for the term of one year, when duly qualified by law, and until its successor is qualified"; 2 per cent. interest on daily balances being again stipulated. At this time the city had on deposit in the bank some $28,000. By January 12, 1931, the deposit had been increased to $33,-162.92. The bank did not pledge any bonds, and on January 12, 1931, failed, having on that day taken in deposits of about $30,000, including $15,000 of cash of which none came from the city, and having suffered withdrawals of $60,000. The receiver got in cash $15,475.50, which was the lowest cash balance on any date, and got some $12,000 from correspondent banks. The deposit in question arose from taxes deposited by the city tax collector. No evidence at all was given as

to what sort of funds the tax collector in fact put into the bank at any time, nor what disposition the bank in fact made of any of them. The contention for the city is that its public money under the law of Mississippi is a trust fund and entitled to prior payment; that, if it must be traced, this is successfully done through the presumption that the tax officer collected and deposited only cash, as he should have done, and through the further presumption that the bank set that cash aside and used it last, so that at least the $15,475.50 remaining when the bank closed is to be esteemed the public money. The District Court held against these contentions.

■■ The intent of the National Bank Act as specially expressed in 12 USCA § 194 is that, after the redemption of an insolvent bank's circulating notes is provided for, the remaining claims against it shall receive only pro rata dividends. A claimant who asks more must show a valid lien or title existing before the insolvency of the bank. When, as here, the claim is based on the delivery of money to the bank as a deposit and it is asserted that under the circumstances the bank got no title to the money but took it as a bailee or trustee, the claimant must, as against the receiver and the other claimants whom he represents, show both a right to reclaim in specie the deposited money and that the receiver got that very money or that he got a fund into which the bank had mingled and confused it, and which still contained it when the fund passed to the receiver. Pottorff v. Key (C. C. A.) 67 F.(2d) 833.; Hancock County v. Hancock National Bank (C. C. A.) 67 F.(2d) 421. Failing to do this, he fails to show any better right to have the money in the receiver's hands than other claimants have. Whatever may be the varying views of the state courts,[1] this is the established doctrine in the federal courts, and their views must prevail in the distribution of the assets of a national bank, because they are the final interpreters of the federal statute which is part of the supreme law of the land.

■ The contract with the bank contemplated that the bank should use the deposited money, paying interest on it, and secure it by a pledge of bonds as provided by the Mississippi statutes. Under those statutes, a depository on qualifying by giving security is issued a commission which states the amount of deposit it may accept. Deposits lawfully made in a bank thus commissioned create the

relation of debtor and creditor, and the public depositor must look only to its security, standing otherwise as a general creditor. Potter v. Fidelity & Deposit Co., 101 Miss. 823, 58 So. 713; Bank of Commerce v. Clark, 114 Miss. 850, 75 So. 595. A deposit received without qualifying (Bank of Commerce v. Gulfport, 117 Miss. 591, 78 So. 519; Love v. Murry, 135 Miss. 749, 100 So. 277), or in excess of the amount of the qualification (Powell v. Board of Sup'rs of Tunica County, 107 Miss. 410, 65 So. 499, Ann. Cas. 1916B, 1262), falls under Mississippi Code 1930, § 2914: "All money deposited in a bank, or with any depository, by or for a tax collector, or other officer having the custody of public funds, state, county or municipal * * * whether the same be deposited in the name of the officer, as an individual or as an officer, or in the name of any other person, is prima facie public money and a trust fund, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository." The section then directs the bank examiner who takes charge of a failed bank to repay in full such a deposit as far as possible from the first money coming into his hands. The quoted part of this section was at first construed to prevent the title to the public funds from passing to an unqualified bank, so that on tracing them they might be recovered. Fogg v. Bank of Friar's Point, 80 Miss. 750, 32 So. 285; Metcalfe v. Bank, 89 Miss. 649, 41 So. 377. But in Commercial Bank v. Hardy, 97 Miss. 755, 53 So. 395, it was declared unnecessary to trace and that a general preference against all assets was established by the section. This ruling was repeated in Green v. Cole, 98 Miss. 67, 54 So. 65, and Levee Commissioners v. Powell, 109 Miss. 415, 69 So. 215.

■ In so far as the state statute is construed to establish a general preference against the assets of the failed bank irrespective of a tracing of funds which never belonged to the bank, it is plainly in conflict with 12 USCA § 194, and cannot be applied to a failed national bank. Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700. In so far as it is construed to forbid the deposit of public funds in a bank unqualified to receive them and to prevent the relation of debtor and creditor from arising, another question is made, for it has often been held that such deposits may be traced into and reclaimed from the assets of an insolvent national bank. San Diego County v. California National Bank (C. C. A.) 52 F. 59; Merchants' National Bank v. School District (C.

---

[1] The cases are elaborately reviewed in an extensive note in 82 A. L. R. p. 46.

C. A.) 94 F. 705; Board of Commissioners v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100; American Surety Co. v. Jackson (C. C. A.) 24 F.(2d) 768; United States National Bank v. Centralia (C. C. A.) 240 F. 93. Our case of Hancock County v. Hancock National Bank (C. C. A.) 67 F.(2d) 421, is not to the contrary, for it went on the point that the Georgia statute did not forbid but authorized the deposit. If the later Mississippi decisions affirming that the statute creates a general preference, and that in United States F. & G. Co. v. Village of Bassfield, 148 Miss. 109, 114 So. 26, asserting that a county treasurer has a right to deposit county money in an unqualified bank, have not overruled the earlier ones that it forbids such deposits as are here involved and disables the tax collector to pass title to the public money and the bank to receive it, the case still fails on another point. Neither the complainant nor the receiver undertook to prove just what was at any time deposited in bank by the tax collector and what the bank did with it. The bulk of the deposit was created in the year 1930, and none of it immediately before the failure. There was great opportunity for what was deposited to have become dissipated in the bank's business, especially as it is plain that the bank, paying interest as the District Court finds it did, believed it was entitled to use the funds as its own. The cash that the bank had on closing might easily be that which was put in by others than the city on that same day. It does not appear how the credits with the correspondent banks which were collected by the receiver arose. The question is one of the burden of proof.

Complainant asserts that the Mississippi law, Mississippi Code, § 3232, made applicable to municipalities by section 2584, requires that taxes be paid in currency of the United States or in state warrants, and that it must be presumed that the tax officer did his duty in receiving only such, and that the bank got only such, and not checks on itself which would not have augmented its assets, but would only have produced a shifting of credits, and that the bank kept unused, so far as possible, what it thus wrongfully received. Whether or not this reasoning involves a forbidden piling of inference on inference, we think the initial inference is faulty. Section 3232 requires the tax collector to receive the things named in payment of taxes, but does not forbid his taking tentatively checks. He therefore does not breach any duty as an officer if he receives checks, and it is common knowledge that in commercial communities taxes are extensively thus collected. The check is not payment, but only a means of procuring payment, and, if the check is not honored, the tax is not paid, though a receipt be issued and though the tax officer be negligent in delaying presentation of the check. Moritz v. Nicholson, 141 Miss. 531, 106 So. 762. We see nothing in the presumption of right official conduct to negative the possibility that much of what was deposited in the bank was checks on itself. In depositing such checks the officer would have only a credit with the bank and no identifiable thing which could be a bailment or a trust. It is possible but unproven that checks payable elsewhere were deposited and that their proceeds remained in the hands of the correspondent banks and might have been so traced and recovered. Washington Loan & Banking Co. v. Fourth National Bank (C. C. A.) 38 F.(2d) 772. And the doctrine of Knatchbull v. Hallett, L. R. 13, Ch. Div. 696, which has been extensively applied in bank cases, might serve to trace deposits of public cash not exceeding $15,475 into the cash on hand when the bank closed. But the fundamental difficulty is that the complainant has established no data on which a tracing could commence. It is not known whether cash or local or foreign checks were deposited or when. It cannot be doubted that, as against other claimants as innocent as himself, he must at least prove what sort of property and how much of it constituted the several deposits which he wishes to trace. "Mere proof of making deposits, without showing their nature or disposition, does not satisfy the requirement of tracing." Board of Commissioners v. People's Bank & Trust Co., 34 N. M. 166, 279 P. 60. "The claimant has the burden of identifying the property in its original or altered form. * * * It is not enough to show that at the time of receipt the general assets of the insolvent were increased or that debts were discharged." Texas & Pacific R. R. Co. v. Pottorff, Receiver (U. S.) 54 S. Ct. 416, 420, 78 L. Ed. ——, Note 19; Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806.

Judgment affirmed.