COMMERCIAL NAT. BANK & TRUST CO. OF LAUREL *v.* HINTON.*

(Division B.    April 6, 1925.)

[103 So. 359.    No. 24822.]

GUARDIAN AND WARD.    *Bank appointed guardian although not qualifying held liable for interest at legal rate on minor's money from date of receipt to date of final settlement.*

Where a guardian was removed by the chancery court on motion, and a bank was appointed as guardian, but did not qualify as such as directed by the decree, but afterwards received the funds of the minor from the discharged guardian with notice that such bank had been appointed guardian at the time of the receipt of the money, the bank will be held liable in such case for six per cent. interest, being the legal rate, for the money so received from the date of the receipt thereof to the date of final settlement.

---

*Headnote 1.    Guardian and Ward, 28 C. J., section 245.

APPEAL from chancery court of Jones county.

HON. G. C. TANN, Chancellor.

Suit by Burgie Hinton against the Commercial National Bank & Trust Company of Laurel. From a decree for complainant for less than she asked, defendant appeals, and complainant brings cross appeal. Affirmed, both on direct and cross appeal.

*Deavours & Hilbun,* for appellant.

The theory of appellee's suit, in substance, is as follows: That on October 26, 1910, by a decree of the chancery court of that date, appellant was appointed guardian of the estate of complainant; that on January 27, 1912, appellant received on account of said guardianship the sum of four hundred ninety-seven dollars and twenty-six cents; that appellant never at any time made application to the court to loan said sum or to fix the rate of interest on said sum, it not being needed for current expenditures; that after becoming an adult, over the age of twenty-one years, appellee on August 31, 1923, made demand that appellant make its final report and settlement of its guardianship; and that upon appellant's failure to pay the principal sum together with ten per cent per annum interest thereon from January 27, 1912, to March 27, 1914, and eight per cent per annum interest thereon from March 27, 1914, to the date of payment, appellee filed her suit in the chancery court praying for a decree against appellant for said sum.

The lower court entered a decree against the appellant for the principal amount, which it admitted that it owed the appellee and had at all times offered to pay, together with six per cent interest thereon from January 27, 1912, to date of payment.

Complainant bases her suit on the ground that the Commercial Bank & Trust Co. and this appellant were guardians of her property, under the law; that she demanded an accounting of her said guardian as provided by law to be charged to guardians who neglected to invest the money belonging to their wards. We submit that the decree of the court is erroneous in that six per cent interest per annum was charged from the date the money was deposited in the bank. We submit that appellee utterly failed to make out her case in the court below for the following reasons: (1) The decree, the only evidence of any pretended appointment, shows affirmatively on its face that if there was any attempt to appoint the bank guardian of the estate of any person, it was that

of James Hinton, a minor, rather than Burgie Hinton, the complainant. (2) The pretended decree so far as it purports to appoint the bank as guardian of either Burgie Hinton or James Hinton was and is a nullity because the court was without jurisdiction to make said appointment. (3) The bank had no notice or knowledge of said pretended appointment, did not consent to it, did not execute a bond or file the oath prescribed by statute, or take any steps to qualify as such guardian.

It follows then, if we are correct in our contention that neither the Commercial Bank & Trust Co., nor this appellant were legally appointed guardians of the estate of appellee, that this suit must fail and the decree of the court below should be reversed and a proper judgment entered here.

We respectfully submit that the decree of the lower court should be reversed and that a decree here should be entered for complainant in the sum of four hundred ninety-seven dollars and twenty-six cents, without interest.

*Jeff Collins,* for appellee.

We contend that there is enough in the record to identify this order beyond doubt as an order, and no other, in the matter of the guardianship of Burgie Hinton, a minor, and being such the appellant is therein appointed as guardian of the estate of said minor and there can, therefore, be nothing in the contention made by appellant that the said bank was not appointed in said decree as the guardian of appellee's estate.

Even if the appellant was not legally appointed guardian of this appellee's estate by the chancery court of the second district of Jones county, Mississippi, it became the guardian of said estate when it took over the property of this appellee and received therefrom the profits thereof.

We submit that under any phase of the case this appellant cannot escape the responsibility of guardian, because, if there was no legal appointment by the court under the decree referred to in the record, the appellant under the facts in this case became under the law what is termed "a guardian *de son tort*." 12 R. C. L., sec. 12; 21 Cyc., sec. H, p. 20; 21 Cyc., sec. B, p. 195; 48 Am. St. Rep. 826 (Vt.), full discussion; *Gilfillen's Est.*, 50 Am. St. Rep. 760, citing and quoting with approval many cases; *Van Epps* v. *Van Deusen*, 25 Am. Dec. 516; *Doris* v. *Harkness*, 41 Am. Dec. 184; *Gregory* v. *Jane Field*, 63 Miss. 323. The case of *Hauenstein* v. *Gillespie*, 19 So. 673, held that the sureties on a guardian's bond were estopped by its recitals to deny the validity of the guardian's appointment. See, also, *Earl* v. *Crum*, 42 Miss. 165; *Martin* v. *Stephens*, 30 Miss. 160.

While all these Mississippi cases above cited are not directly in point, they do show the general trend of the decisions of the Mississippi supreme court, with reference to the responsibilities of persons taking charge of the property of minors with respect to their accountability for the handling of said property for the benefit of said minor. The case of *Way* v. *Levi* (La.), 6 So. 661, held that the natural tutor could not relieve himself from responsibilities as tutor of the minor by omitting to take the oath, letters of tutorship having been issued to him.

Can appellant be heard to say, notwithstanding the fact that we knew that the guardian of this minor's estate was being discharged upon payment of the money over to us by the said guardian, and we knew that the court expected us, and the former guardian expected us to act as guardian, and the former guardian turned the money over to us on that expectation, then because we did not go and do our duty by making bond and taking an oath, and filing accounts, and getting orders from the court as to how to invest the funds, purely personal matters with us, so far as the ward was concerned, that we did not have to account as guardian of this ward's estate. 21 Cyc., sec. B., p. 152; 21 Cyc., 153, Note 88.

ETHRIDGE, J., delivered the opinion of the court.

About 1904 or 1905 B. F. Hinton was appointed guardian of Burgie Hinton and served as such until the 26th day of October, 1910. Just prior to this date a petition had been filed to remove B. F. Hinton as Guardian and to have him file a final account. On that day a decree was entered that a final account be filed, and it was agreed that the balance in the hands of the guardian was four hundred fifty-one dollars and thirty-three cents. This fund was directed to be paid over to the guardian thereafter to be appointed. On the same day a second decree was entered reciting, "This day this cause came on to be heard on petition of the guardian of said James Hinton praying that he be allowed to resign said trust," etc. This decree was styled No. 1200, headed "In the Matter of the Guardianship of Burgie Hinton, a Minor." The other decree was headed "In the matter of the Final Account of B. F. Hinton, Guardian of Burgie Hinton, a Minor." The last decree, after appointing the mother of Burgie Hinton the guardian of her person, and that her guardian had filed his final account, and that same had been approved, decreed that B. F. Hinton—"be and he hereby is relieved from further duties as said guardian, and it is further ordered that the said mother of the said minor, the said Mrs. Austrander, is hereby appointed guardian of the person of said minor on her taking the oath prescribed by statute, and that the Commercial Bank & Trust Company of Laurel, Miss. is appointed guardian of the estate of said minor, on its giving bond in the sum of five hundred dollars and taking oath prescribed by statute, and the said guardian is directed to pay to the Commercial Bank & Trust Company of Laurel, Miss., the sum of four hundred fifty one dollars and thirty-three cents, the amount in his hands belonging to the said minor, and on the payment of the same to be discharged from further liability on his bond as said guardian."

The records did not show that any petition was filed by appellant to be appointed guardian, or that it had executed any bond or qualified as such guardian. The original file of papers was lost, but the dockets of the chancery court did not show the filing of such petition by the appellant bank, or that it had filed any bond or otherwise qualified and no reports had been filed. Nothing was done until 1912, when B. F. Hinton went to the bank and deposited four hundred ninety-seven dollars and twenty-six cents, the deposit slip for which read as follows:

"Deposited in Commercial Bank & Trust Co., Laurel, Miss., by Burgie Hinton, Minor, 1/27/1912.

"Items not payable in Laurel are taken at depositor's risk and credited subject to actual final payment. This bank, as agent for depositor, will forward such items either direct to drawee, or another bank in the same city, or indirectly through correspondents in other cities.

"Received from B. F. Hinton, guardian, on 1/27/12:

"Principal ..................................................$451.33
Interest 1 year at 8 per cent................................. 36.10
Interest 3 months and 1 day at 8 per cent. ................... 9.83
                                                            ————
"Total ....................................................$497.26

"Duplicate Deposit Slip, Not Negotiable.
                    "Commercial Bank & Trust Co.,
                        "[Signed]   By P. H. Saunders."

The deposit remained until 1923, when Burgie Hinton became of age and went to the bank and demanded a settlement. Appellant offered her the amount of the original deposit without interest, which she refused to take, and filed a suit for an accounting, claiming ten per cent. interest from January 27, 1912, to March 27, 1914, and eight per cent. interest from then on to final settlement, making the total amount demanded nine hundred eighty-six dollars and ninety-eight cents.

B. F. Hinton, the former guardian, and two other witnesses testified that when the deposit was made in the

bank that the president of the bank, Dr. Saunders, was notified that the bank had been appointed guardian for appellee; that Dr. Saunders said he did not know about it, and left the bank and went somewhere, and returned after a little while and stated that he would take it and gave receipt for the money, four hundred ninety-seven dollars and twenty-six cents. The cashier of the bank, who was also the trust officer, testified that he had no knowledge that the bank had ever been appointed guardian; that the bank had never accepted the guardianship, and that all that the books showed was a deposit made as above stated to Burgie Hinton, a minor; that the bank at all times is willing to pay over the original deposit amounting to four hundred ninety-seven dollars and twenty-six cents, without interest, upon satisfactory proof that said Burgie Hinton is of age; that the bank was then ready to pay said amount; also, that when demand was made for an accounting, and the bank was informed of the contention of the appellee, that said amount was transferred to the savings department and interest at four per cent. per annum was offered to be paid. The testimony of the cashier does not disprove the fact that the money was received by Dr. Saunders, the president of the bank, to be used for the minor.

The chancery clerk was introduced as a witness and exhibited docket entries of the chancery court with the result above stated. The docket and records showed that no bond was filed by the bank, no oath of office taken, and no other qualification made by the bank, and no reports made by the bank as guardian or otherwise.

The chancellor held the appellant liable for six per cent. interest from the date of the original deposit, and disallowed the contentions of complainant as to the ten per cent. and eight per cent. claimed. From this decree appellant takes a direct appeal and appellee a cross appeal.

We do not think that the bank became a guardian under the circumstances. It had never petitioned or consented thereto, and had never acted as such. It received

the money for deposit, and this deposit showed that the owner was a minor. Under the circumstances, the deposit would draw interest at the legal rate from the date of the deposit, it not being an ordinary deposit, but money had and received to be kept until the minor became of age or until the guardian had qualified to receive it. We think the chancellor's decree is correct, and the judgment will be affirmed on direct and cross appeal.

*Affirmed.*