## SUNFLOWER COUNTY *v*. BANK OF DREW.*

(Division B.    May 25, 1925.    Suggestion of Error Overruled June 23, 1925.)

[104 So. 355. No. 24978.]

1. BANKS AND BANKING. *Bank not qualifying as public depository, in which county funds were deposited, held liable to account for interest received by use of such funds.*

    Where a county treasurer deposited the public funds in a bank without such bank qualifying as a public depository, and the bank was taken charge of for liquidation by the board of bank exam-

iners, who refused to pay the money so deposited on demand, but continued to use such funds, earning interest thereon during the period between the demand and the final payment, it is liable to account to the county for the interest received by the use of such funds.

2. BANKS AND BANKING. *Bank not qualifying as public depository, accepting county funds, held trustee and accountable for interest.*
Such funds under section 3485, Code of 1906 (Hemingway's Code, section 2823.), are trust funds, and the bank in such case is trustee for the county in reference to such funds and is accountable to the county for interest received by the use of such funds. *Adams* v. *Williams,* 97 Miss. 113, 52 So. 865, 30 L. R. A. (N. S.) 855, Ann. Cas. 1912C, 1129, cited.

---

*Headnotes 1. Banks and Banking, 7 C. J., section 532 (1926 Anno); 2. Depositaries, 18 C. J., section 73. (1926 Anno); On liability of public officer or his bond for interest received on public money, see note in 30 L. R. A. (N. S.), 855.

APPEAL from chancery court of Sunflower county.
HON. E. N. THOMAS, Chancellor.
Suit by Sunflower county against the Bank of Drew. From a judgment dismissing complainant's bill, it appeals. Reversed and remanded.

*Moody & Williams,* for appellant.

On the trial of this case in the court below, counsel for appellees contended that merely because principal was paid into the Treasury by the liquidating agent of the bank, without the payment of interest, the right of the county to collect interest was extinguished, and his contention was accepted by the special chancellor. The question presented by this appeal is: Does the payment of the principal sum due the county, which has been withheld for more than two years, extinguish interest on such fund? Our contention is, that on the closing of the bank on January 20, 1922, interest began to run on the funds on deposit at the rate of six per centum per annum until paid.

Even if it be conceded that the county was not entitled to a guaranty certificate, as the banking examiner contends, yet we insist that the deposits should bear interest, payable out of the assets of the bank on which it constitutes a first lien, from the date the bank was closed to the date it was paid. Sec. 2075, Hemingway's Code; 33 C. J. 136. No demand is necessary where a bank is closed by the banking examiner. *Richmond* v. *Irons*, 30 L. Ed. (U. S.) 864.

The court there held that the bank, as a bank, was liable for interest on the deposit from the date the bank was closed; and as the liability of the stockholder is based on the liability of the bank, it held that interest shall further run on such liability from the date the bank was closed, and that no demand was even necessary. Counsel for appellees relied almost entirely upon *Y. & M. V. R. R.* v. *W. C. Craig & Co.*, 111 Miss. 297, 71 So. 561, which case cites with approval *Bennett* v. *Federal Coal & Coke Co.*, 40 L. R. A. (N. S.) 588. But in the Craig case there was executed a receipt in full, and in the Bennett case there was a receipt executed "in settlement of account." Both cases are clear cases of accord and satisfaction, and in neither case was there a demand made at the time of the payment for interest which was refused. But in the case at bar, when the principal sum was paid, interest was also demanded. See, *Shepard* v. *City of New York*, 110 N. E. 433; *Devlin* v. *Mayor, etc., of N. Y.*, 121 N. Y. 123, 127, 30 N. E. 45, 46. Ib. 436-437.

In neither of the cases cited by counsel for appellees was the party claiming the interest, after the payment of the principal, a county, or a municipality, or any governmental subdivision. In this case the appellant is the county of Sunflower, and neither the doctrine of waiver, nor the principle of accord and satisfaction, can be invoked against it except in cases where contract is made and evidenced by order entered on the minutes of the board of supervisors.

A county can only contract by order duly entered on the minutes of the board. *Northern Drainage District* v.

*Bolivar County,* 111 Miss. 250, 71 So. 380; *Gilchrist-Fordney Co.* v. *Keys,* 113 Miss. 742, 74 So. 619; *Lamar County* v. *Tallay,* 116 Miss. 558, 77 So. 299.

This court has held that section 100 of the Constitution prohibits a municipality from remitting taxes due and unpaid. *Morris Ice Co.* v. *Adams,* 75 Miss. 410, 22 So. 944.

It is conceded that the interest sued for was a liability in favor of appellant, but it is sought to avoid this liability by the act of the treasurer in accepting a part of the money due, as the argument is made that his act in that respect, although he demanded the balance of the money at the time, and his demand was refused, works a release of the liability. If the board had passed a formal resolution releasing appellees from liability for this interest, it would have been utterly void, because in violation of the Constitution; how then, could the act of the treasurer in permitting the money to be paid into the treasury, and at the same time demanding the balance, work a release?

The legal question involved in this appeal has been settled in our favor by this court, in, *Miller, Rev. Agent,* v. *Henry, Ins. Com.,* 103 So. 203.

If the contention of counsel for appellees is correct, then any depository would have it within its power to prevent a county in any case from collecting interest on the depository account, by the simple expedient of going to the chancery clerk and obtaining a receipt warrant for the principal sum due, and paying same into the treasury. I cannot believe that the law would permit such a result.

In this case the statute (chapter 177, Laws 1922), creates in favor of the county a first lien on the funds on deposit when the bank failed, and directed the banking examiner, or his agent in charge, out of the first money coming into his hands, to pay over the full amount thereof, as far as possible, and that on failure so to do, the chancery court, or the chancellor, shall, on ten days' notice, require the payment thereof. Yet, although it is

admitted that the banking department continued to use the funds of the bank, and collected as much as eight thousand dollars in interest, which was charged at the rate of eight per centum per annum, and withheld payment for nearly three years, it complains that the county sought the recovery of interest at the rate of six per centum per annum, on such funds for that time, and to avoid payment of interest without consulting the board of supervisors, turned the principal sum into the treasury, and now claims that such act extinguishes the interest. We do not think so, and respectfully submit that the decree appealed from should be reversed, and decree entered here for the full amount of interest sued for in this case.

Counsel for appellee argue this case as if the suit had been brought for interest on the deposit for the time it was in the Bank of Drew, and the bank was a going concern. We are not seeking to recover interest for that time. When the bank failed, the county had an account against the bank for a fixed sum, to-wit, the amount of approximately fifteen thousand dollars, as to which the appellant had the right to have same paid over, under the statute at once. This payment was refused, and the money was kept and used by the liquidating agent for the state banking department, and loaned out at the rate of eight per cent per annum, and when payment of the account was finally made, interest was demanded but refused. The case at bar is therefore different from the case argued in the brief for appellee.

Appellee also takes the position that there is no statute in this state giving appellant the right to collect interest on this account; but this court has held in *Miller* v. *Henry*, 103 So. 203, that section 2678, Code 1906, section 2075, Hemingway's Code), was applicable to just such a case as this.

Counsel quote from 22 Cyc. 1573, to the effect that acceptance of the principal under protest will bar recovery

of the interest. That part of the text quoted is brought forward in Corpus Juris, with the following clauses added: "But this rule has been held not to apply where the claimant does not receipt for the principal sum in full, but on the contrary notified the debtor that the amount was insufficient." 33 C. J. 256. The text cites *Devlin* v. *New York,* 30 N. E. 45, and *Shepard* v. *New York City,* 216 N. Y. 251, 255, 110 N. E. 435; Ann. Cas. 1917C, 1062.

We are unable to see how the case of *Thompson* v. *Matthews,* 56 Miss. 368, helps the case of appellee, or strengthens his position in any respect. As we understand that decision, prior to the Code of 1857, there was no statutory interest on accounts, but since the Code of 1857 there has been a statute requiring such payments. The relation between the bank and the county was clearly that of a fiduciary. The bank had the money that belonged to the county.

We respectfully submit that after taking the money belonging to the county, which had been raised by direct taxation on the property of its citizens, and using it for more than two years, collecting interest on the same at the rate of eight per cent., rather than applying it to the payment of this account in favor of the county, that the state banking department should not be heard to complain if the court requires it to pay over a part of this interest which it has earned by the use of this money.

*Ward Allen* and *Flowers, Brown & Hester,* for appellee.

As stated by the court in the former appeal *Sunflower County* v. *Bank of Drew,* 101 So. 192, the Bank of Drew was not a public depository. These funds were placed in the bank as a "bank" and not a depository. The funds were in the custody of the county treasurer. There was no contract to pay interest on the deposit. The treasurer could deposit the money in the bank. This

record shows there was no county depository since it is charged in the petition, and not denied, that this bank and others in the county failed to make the required bond. "It has never been unlawful in Mississippi for a public officer to deposit public funds in a bank; no more than it has been unlawful for him to deposit such funds under the floor of his dwelling house." *Board of Levee Commissioners* v. *Powell,* 109 'Miss. 415, 69 So. 215.

The treasurer had no contract with the bank for the payment of interest. It was an ordinary deposit of money, made in the usual course of business, just as any other deposit, with the exception that it was secured by a first and prior lien on all the assets of the bank. There was and is no statute requiring the payment of interest on these funds so deposited in the bank by the treasurer.

The entire principal has been paid to and accepted by the county. This suit is for the recovery of the interest alleged to be due. The payment to the county was not a *pro tanto* settlement but was a settlement in full of all the principal of the respective funds mentioned. No interest on the funds was paid. This is a suit filed by the county for interest after all the principal has been paid. The sole question for decision is: "Can interest which is not due by the terms of the contract, or by the requirement of a statute, be recovered in a separate action therefor, after the entire amount of the principal debt has been paid?"

To state this proposition is to answer it. There is not an authority in the country to support an action of this sort. Certainly this court has settled the proposition in the case referred to by counsel for appellant. *Y. & M. V. R. R. Co.* v. *Craig & Co.,* 111 Miss. 297, 71 So. 561, citing *Bennett* v. *Federal Coal & Coke Co.,* 70 W. Va. 456, 74 S. E. 418, Ann. Cas. 1913 E. 578, 40 L. R. A. (N. S.) 588, and the note thereto.

Counsel undertakes to escape the effect of this decision by taking the position that in the Craig case there was a receipt executed "in settlement of account." And he

says there was no demand for interest at the time of payment. Neither proposition is of value to counsel.

As to the effect of the receipt. What difference would there be in this case if the treasurer had actually issued a receipt showing payment in full of the principal sums mentioned? The bill filed charges that the principal of each of the several accounts was paid to the county and the answer admits this. Is this not as effective and as conclusive as a receipt could be. No one contends that anything but the principal sum was paid. We denied liability for interest when we paid the principal and we still deny it. There was no contract to pay interest and no statute requiring its payment. We were not liable to begin with but certainly we are not liable now that the entire principal sum has been paid in full.

As to the demand for interest and its refusal at the time of acceptance by the county of the principal sum: The effect of this is as follows: First: It precludes absolutely any possibility of an argument being made that the amount was accepted by the county as *pro tanto* settlement of the principal sum. In other words that part of the sum accepted was treated as interest and the balance as principal. Second: It precludes absolutely the possibility of any question as to an additional or side agreement as to the future payment of the interest. It completely negatives the existence of an agreemnt of any nature concerning the interest. In short, this clause in the agreed statement of facts has an opposite effect from that which counsel seems to think it has. There was never an agreement to pay interest on these funds. Third: "Even when the creditor accepts the payment of the principal sum under protest, or otherwise claims interest thereon, such acceptance will prevent his recovery of interest on such debt thereafter." 22 Cyc. 1573.

There are only two exceptions to the rule that interest cannot be recovered after payment of the principal: 1. When the interest is expressly included in the contract, as for instance in the case of a promissory note where the maker expressly agrees and contracts to pay the

principal sum and also interest thereon at a stipulated rate. 2. Where the interest is required to be paid by statute, as in the *Monroe County case* in 79 So. 184, relied on by counsel for appellant.

But in instances where there is no contractual obligation to pay interest and no statutory requirement that interest shall be paid, the universal rule, so far as we have been able to find, is that the interest is only allowed as damages for the wrongful withholding of the money; is only an incident and not an integral part of the debt, and payment of the debt extinguishes the right to collect interest. *Stewart* v. *Barnes,* 153 U. S. 456, 38 L. Ed. 781; *Davis* v. *Harrington,* 160 Mass. 278, 35 N. E. 771; *Thompson* v. *Matthews,* 56 Miss. 368; *Bennett* v. *Coal Co., supra,* cited by this court in the *Y. & M. V. case,* 111 Miss. 297; *So. C. R. Co.* v. *Morovio,* 61 Bart. (N. Y.) 180.

The cases relied on by counsel for appellant are not in point. A demand for payment may, as stated by counsel, start the running of interest, but an acceptance by the creditor of the principal sum will destroy his right to recover the iterest, in a separate action therefor.

And we are not here concerned with those cases where the interest was allowed to be connected in the action on the principal. For instance in the *Henry case,* 103 So. 203, cited by counsel for appellant, where the action seems to have been for the principal sum of the licenses and taxes collected by Henry together with interest on such accounts.

Counsel for appellant says that it is conceded that the interest sued for was a liability in favor of appellant, but it is sought to avoid this liability by the act of the treasurer in accepting part of the money due. Lest the court get an erroneous idea of our position we want to say here and now that the state banking department, which is the real defendant in this case, has never made any such concession and never will. On the other hand we have always denied and shall continue to deny liability for this interest. And our main reason for denying liability for this interest is that nine-tenths of the delay in set-

tlement of this claim has been directly due to the unnecessary and harassing suits filed by the county in connection with the deposits.

Section 100 of the Constitution does not save the case for appellant. There was nothing to remit. The claim for interest, if it ever existed at all, which we deny, was a mere incident to the debt, and was extinguished when the debt was paid. There was no contract with the county for the payment of interest and its payment was not required by statute. There was no county depository in Sunflower county and the treasurer had a perfect right to put this money in the Bank of Drew. He might have put it in a sack and buried it. Every dollars of it has' been accounted for and that is the end of the matter. The decree of the lower court should be affirmed.

Argued orally by *J. L. Williams,* for appellant, and *J. T. Brown,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The Bank of Drew was the legally qualified depository of certain funds of Sunflower county, Miss., during the year 1920. In January, 1921, the bank filed a bid which was accepted by the board of supervisors to act as depository for the year 1921 for the said funds, but failed to file the bond necessary under the law to qualify as such depository. However, the county treasurer deposited the funds in the bank, and the funds were partially paid out on warrants issued by the board of supervisors. On January 20, 1922, the bank was taken over by the state banking department for liquidation, and at the time of the taking over the following funds were in the Bank of Drew to the credit of the county's funds:

General bond interest fund ..................... $9,212.40
District No. 2 road bond interest fund ....... 6,728.61
Wade consolidated school fund .............. 18.79

A suit was filed by Sunflower county against the bank and others for such funds, which suit the court refused

to entertain because the chancery court had charge of the bank in liquidation for administration in the liquidation proceedings. See *Sunflower County* v. *Bank of Drew* (Miss.), 101 So. 192. The opinion in that case, with reference to granting the relief in that aspect of the case, said:

"The other question presented in this case is whether or not the chancellor erred in refusing to give a decree against the bank in favor of the county for the amount of the funds due the county. We think the action of the chancellor in refusing the order was correct. It appears that the affairs of the closed bank are pending in and being liquidated by the same court, which has full control over all of the assets, and in due course of time will adjudicate the liability of the bank and the preference lien against its assets to secure the payment of the amount due the county, and will also make any further orders necessary to enforce the county's special claims against the assets of the defunct bank. For this reason we think the chancellor was well within his discretion to deny the relief sought in the case at bar."

Thereafter on the 28th of June, 1924, the special agent of the state banking department paid into the treasury of Sunflower county the sum of eighteen dollars and seventy-nine cents, the principal sum due the Wade consolidated school fund, and the sum of nine thousand two hundred twelve dollars and forty cents, the principal sum due the general bond interest fund, and on July 31, 1924, paid into the county treasury the sum of six thousand seven hundred twenty-eight dollars and sixty-one cents, being the principal sum due district No. 2 road bond interest fund. The county treasurer at that time demanded the payment of interest on said sums, but the interest was not paid, and this suit was brought therefor.

The interest demanded is six per cent. per annum, amounting to a total of two thousand three hundred ninety-five dollars and forty-nine cents.

The case was tried on an agreed statement of facts in which it is agreed, among other things:

"It is further agreed that, since the said Bank of Drew was taken over by the state banking department, there has been collected out of the assets of the bank, as interest on outstanding indebtedness, the sum of eight thousand dollars, the same being for interest at the rate of eight per cent. per annum; that the said state banking department has paid out of the assets of the said bank, since its liquidation began, on prior liens on property on which the Bank of Drew held securities, the sum of fifty thousand dollars; and that there is now on hand in cash the sum of fourteen thousand dollars of the assets of the said bank."

The court below refused to allow the interest claimed on these county deposits, and dismissed the bill, from which judgment this appeal is prosecuted.

It is contended by the appellant that, as the county's funds were placed in the bank without the security required by law, and when the bank was liquidated demand was made for the money and refused, and the money used for other purposes by the banking department in liquidation, six per cent. interest should be allowed from the date of liquidation until the payment of the funds.

It is the contention of the appellee that, inasmuch as there was no contract for interest on the money deposited in the Bank of Drew by the county treasurer, and as interest is a mere incident in the nature of damages for the detention of the money, payment of the principal sum discharges the full obligation of the bank to the county, and that a separate suit cannot be maintained for interest alone.

It seems to us that under the state of facts here involved the moneys deposited in the bank are trust funds under section 3485, Code of 1906 (Hemingway's Code, section 2823), which so provides, and that the bank having the money as trustee for the county and having refused to pay the money on demand of the county, and having used the money and the assets constituting the securities of the county, and by such use having collected interest thereon, that the duty of the bank as trustee is

to pay over to the principal, the county, the money and interest collected thereon. The county's claim, being a preference claim and having priority over other claims, should have been promptly paid out of the first moneys available by the banking department upon liquidation of the Bank of Drew, and, if there were no funds on hand with which to pay it, its duty was, as speedily as possible consistent with safe administration, to have paid the county's claim out of the first funds received. But having failed to do so, and having used the assets, funds and securities for the purpose of earning interest thereon, it should account to the county for the interest on these funds.

It seems to us that the principles announced in *Adams, State Revenue Agent*, v. *Williams*, 97 Miss. 113, 52 So. 865, 30 L. R. A. (N. S.) 855, Ann. Cas. 1912C, 1129, support this view. In that case the original bill alleged that Williams deposited the money or funds belonging to the board of levee commissioners with various banking institutions; that the money was placed in such banks to his credit as treasurer of said board; that said banking institutions, with whom the said money was deposited or to whom it was loaned, paid to the said Williams interest on the public money so deposited. But while the said Williams accounted to the said board for all moneys paid to him as treasurer by order of the board, he failed neglected, and refused to account to the levee board for the money paid him as interest or commissions on the public funds. This interest he appropriated to his individual personal use, making no entry of the receipt thereof on the books of account, making no report thereof to the board of levee commissioners, and concealing from the said board the fact that he had received said interest. He never accounted to the board for the interest so received by him, and failed, neglected, and refused to pay the same over to the said board, or in any way to account for the same. In that case, in stating the questions for decision, the court said, among other things:

"Fifth, is the surety on this official bond liable for interest received on the public funds by the principal, Williams? Sixth, is the treasurer of the levee board required to pay into the treasury money received by him as interest on the funds intrusted to his keeping?"

In discussing these principles (*Adams* v. *Williams,* 97 Miss., at pages 144-146, 52 So. 871, 872), this court held:

"The great underlying principle here is that the interest on this money logically, legally, and necessarily belongs to whoever owns the money. The use of that money earns the interest. The interest is a mere increment to the principal fund, and it is impossible, on any clear thinking in logic, or in law, to escape the conclusion that the interest is necessarily payable to the owner of the principal fund. Whenever, therefore, the question is settled as to who owns the principal fund, all the rest follows without difficulty. Nothing more is necessary to show who is the owner of this fund than a reading of our statutes. Always and everywhere, public money is referred to and treated as the property of the state, or the county, or the levee board, etc. In no just legal sense can it be possible to say that the treasurer, Williams, was the owner of this money; that he had the legal title to this money in the sense that the money was his absolutely. He is the custodian of the money. He handles the money, he deals with it, but he has the custody, he handles it, he deals with it for, and on account of, his principal, the levee board. The money is the money of the levee board. If Williams died, the money did not go to the administrators of his estate as Williams' money. It would pass into the hands of his administrator, temporarily only; but it is made the statutory, legal duty of his administrator to promptly pay over the money to the proper authorities. Code 1906, sections 3485, 3486. See *Bank* v. *Fogg,* 80 Miss. 750, 32 So. 285, a case which supports the appellant, not the appellee, and shows that the money is the property of the levee board. . . . 'The treasurer may well be held liable absolutely for all money of the state coming into his hands, and be held

liable also for interest on deposits. As stated in another form, such absolute liability does not estop the state to maintain that such interest was received by the treasurer, by virtue of his office, and belongs to his office.' [*McFetridge Case*, 84 Wis. at p. 517, 54 N. W. at p. 11, 20 L. R. A., at p. 237.] And this we think is plainly sound. It is a complete *non sequitur* to say that, because Williams was an absolute insurer, therefore the interest belonged to him. The two principles have no relation whatever to each other. Once settled clearly and definitely whose money the principal sum was, the interest necessarily belongs to that person as an increment to the principal fund, and to argue to the contrary is simply to lose one's self in a metaphysical fog of sophistry, failing to give effect to the central principle of right and justice, making the interest the property of the party who owned the principal sum. As said by the court in the McFetridge Case again: 'It has already been held herein that the public funds were lawfully deposited by Treasurer McFetridge with the banks, and that he lawfully received from such banks compensation by the way of interest for the use of such deposits.' Under those circumstances, and in the absence of any statute separating the interest from the funds and diverting it to other uses, such interest was an accretion or increment to the fund, thus becoming a part of it, and logically and necessarily belongs to the owner of the fund, to-wit, the state.

"It is immaterial that the treasurer stipulated for interest on the deposits, or that the banks paid him such interest, or that both the treasurer and the banks thought he should retain the interest as his own, believing that he was entitled thereto. Such intention and belief cannot affect the ownership of the interest, or its essential character as a portion of the public funds in the hands of the treasurer. Notwithstanding such intention and belief, the interest was, in fact, paid to the said treasurer, and belonged to his said office, within the meaning and intention of the bond in suit. A lawful act cannot be rendered unlawful merely because the actors intended to

follow it by an unlawful act. So when the treasurer lawfully received money, which of right belonged to his office, he receives it by virtue of his office, and cannot, by forming and executing an intention to retain the money as his own, divest the act of receiving the money of its official character.''

The only difference between the case at bar and the *Williams case, supra,* is that in that case the suit was against the treasurer for interest received, and here the suit is against the bank, who was the custodian of the public funds. The same principles were applied in the case of *Commercial National Bank & Trust Co.* v. *Hinton* (Miss.), 103 So. 359, where a guardian had been removed by the chancery court and the bank appointed as guardian. But the bank did not qualify as such as directed by the decree of the court but afterwards received the funds of the minor from the discharged guardian, with notice that such bank had been appointed guardian at the time of the receipt of the money, and the bank used the money in its business. It was not shown in that case how much the particular funds earned as interest as used by the bank, but the money of the minor was commingled with the bank's funds, and the bank loaned its funds and made profits thereby. The court there held that six per cent. was a proper amount to be charged against the bank for the use of the money under the facts and conditions there existing.

It would be an anomalous situation if a bank, or other person, should take funds intrusted to it as trust funds and use them in earning profits for the bank, or other person, and, after demand and refusal to pay over such trust funds, should be enabled to escape an accounting for the amount received by it through its improper conduct. It is not a mere case of interest being given as damages for wrongful detention, but it is a holding of the trustee to a strict accounting of the trust and refusal to permit the trustee to profit by his own wrong.

The judgment of the court will be reversed and the cause remanded.

*Reversed and remanded.*